**SOUTHLAND LLOYD'S INSURANCE CO. and James D. Webb, III, Appellants,**

v.

**Charles W. TOMBERLAIN, Individually and d/b/a Charles Tomberlain Insurance Agency and Charles M. Tomberlain, Appellees.**

No. 06–94–00131–CV.

Court of Appeals of Texas, Texarkana.

Argued Jan. 17, 1996.

Decided March 22, 1996.

Edward L. Merritt, Gregory P. Grajczyk, Harbour, Kenley, Boyland, Smith & Harri, Longview, for appellants.

Rex Nichols, Jr., Law Offices of Rex Nichols, Jr., Longview, Gregory D. Smith, Ramey & Flock, Tyler, Donald W. Cothern, Ramey & Flock, Tyler, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

PER CURIAM.

Southland Lloyd's Insurance Company and James Webb, III appeal the judgment entered in a suit by Charles M. Tomberlain for delayed payment of an insurance claim. Southland and Webb also appeal the judgments entered on their counterclaim against Charles M. (Chuck) Tomberlain, and on their third-party claim against Charles W. Tomberlain, d/b/a Charles Tomberlain Insurance Agency, for breach of contract and fiduciary duty. In addition, Chuck Tomberlain cross-appeals the trial court's failure to treble the damages awarded by the jury. Because we hold that the court erred in charging the jury, excluding expert testimony offered by Southland, and granting Chuck Tomberlain's motions for directed verdict, we reverse and remand the case for a new trial.

Charles W. Tomberlain is an independent insurance agent who owns the Charles Tomberlain Insurance Agency in Longview. His son, Chuck Tomberlain, is an agent with the agency. In addition, Chuck Tomberlain owns and manages numerous real properties in and around Longview. In 1988, Chuck Tomberlain purchased a small house, located at 220 Myrle Street in Longview, from the United States Department of Housing and Urban Development in a discount auction for $13,200.00. Chuck Tomberlain then spent approximately $500.00–$1,000.00 improving the house. On September 9, 1988, Chuck Tomberlain executed a contract for sale of the house to Trennis Willis for $20,000.00, to be paid in monthly installments over ten years at twelve percent interest. Willis immediately began occupying the house. Chuck Tomberlain, acting as agent for the Charles Tomberlain Insurance Agency, issued a policy on the house with Republic Insurance Company in August 1988. On August 15, 1991, the Republic insurance policy on the house expired. Chuck Tomberlain did not renew the policy at that time because his father's agency had stopped writing policies with Republic.

On October 11, 1991, again acting as his own agent, Chuck Tomberlain completed, signed, and submitted an application for a $25,000.00 fire insurance policy on the house with Southland. Southland thereafter approved the policy, but reduced the coverage amount to $20,000.00. Sometime before October 16, Willis vacated the house without notifying Chuck Tomberlain. Chuck Tomberlain immediately began cleaning and repairing the house, and arranged for a new tenant to move in December 1.

In the early morning hours of November 20, 1991, a fire started and burned substantial portions of the house's interior before being extinguished. Damage was estimated by the fire department at $20,000.00. A fire department investigation concluded that the fire was of suspicious origin and was started with the aid of accelerants.

Chuck Tomberlain telephoned Southland on November 20, the day of the fire, to notify them of the loss. The next day, November 21, he faxed them a completed claim form,

along with a copy of the fire marshal's report. Over the next two months, Chuck Tomberlain called Southland periodically to check on the status of the claim. He was told that an investigation was being conducted. The first written response that he received in regard to his claim was a letter from Webb dated January 24, 1992. The letter stated that Southland had determined that the fire was the result of arson and that the company had requested further investigation. Chuck Tomberlain's attorney sent a demand letter to Southland on February 4, requesting that it pay the claim in full.

Southland responded to the demand letter by way of two letters dated February 7, 1992. One letter, addressed to Charles W. Tomberlain, announced that Southland was immediately cancelling its agency agreement with the Tomberlain Agency and notified the agency that Southland intended to seek damages against it for its misrepresentations on the Myrle Street property application. The other letter was written to Chuck Tomberlain's attorney by J. Duncan Webb, IV, James Webb's son and a licensed attorney who performs work for Southland. In the letter, the younger Webb stated that Southland was investigating Chuck Tomberlain's claim as a potential arson incident and that Southland felt it had been "duped" by misrepresentations on the insurance application. The letter demanded that Chuck Tomberlain produce all records and documents of any kind pertaining to the property and to his employment history with the Tomberlain Insurance Agency.

On February 7, 1992, the same date as the two Southland letters, Chuck Tomberlain sued Southland and James Webb. The petition charged Southland with statutory violations in its handling of the claim, breach of the common-law duty of good faith and fair dealing, and negligence. Southland responded by denying all of the allegations of the petition and by filing a counterclaim against Chuck Tomberlain for breach of his fiduciary duties as an agent, breach of his contractual responsibilities as specified in the agency agreement, and negligence in preparing the application. Southland also filed a third-party action against the agency and Charles W. Tomberlain on the same grounds alleged against Chuck Tomberlain in the counterclaim, seeking indemnification from the agency should Chuck Tomberlain be awarded any damages from Southland. On September 9, 1992, in the midst of the lawsuit, Southland paid Chuck Tomberlain $20,900.00 in settlement of his claim, with the intention of pursuing its third-party action against the agency for indemnification. Chuck Tomberlain, however, refused to drop his suit, opting instead to seek additional damages against Southland.

At the close of the evidence, the court granted Chuck Tomberlain's motions for directed verdict on article 21.55 of the Insurance Code (TEX.INS.CODE ANN. art. 21.55, § 2 (Vernon Supp.1996) [the prompt-payment-of-claims statute]), and both Chuck Tomberlain's and the agency's motions for directed verdicts as to all counter- and third-party claims raised by Southland. The case was submitted to the jury on the issues of common-law good faith and fair dealing and statutory unfair insurance practices. The jury found Southland and Webb liable on both counts and found that their conduct was knowing and intentional. It awarded Chuck Tomberlain damages of $107,514.61.

Southland contends that the trial court erred in precluding its expert witness from testifying. Southland attempted to call a Dewitt Altpeter, as an expert witness, to testify regarding the propriety of Chuck Tomberlain's actions and the actions of the Tomberlain agency in completing and submitting the application for insurance. The trial court ruled that Altpeter was not qualified to testify as an expert witness concerning the standard of care for insurance agents because he was not at the time, nor had he ever been, a licensed Texas recording agent.

■ As with other evidentiary matters, the determination of whether an expert witness is qualified to testify is left largely to the trial court's discretion and will not be disturbed on appeal absent a showing that the court clearly abused that discretion. *State Farm Fire & Casualty Co. v. Gandy,* 880 S.W.2d 129, 136 (Tex.App.—Texarkana 1994, writ granted); *Guerrero v. Smith,* 864 S.W.2d 797, 802 (Tex.App.—Houston [14th

Dist.] 1993, no writ); *see also E.I. du Pont de Nemours and Co. v. Robinson*, 38 Tex.Sup. Ct.J. 852, 860, —— S.W.2d ——, —— [1995 WL 359024] (June 15, 1995). Even if such an abuse of discretion is shown, the trial court's evidentiary error will warrant reversal only if it was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 790 (Tex.App.—Texarkana 1992, writ denied). In making this determination, the appellate court must review the entire record. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992).

■ A witness may qualify as an expert by virtue of his or her knowledge, skill, experience, training, or education. TEX.R.CIV.EVID. 702. Southland argues that the requirement imposed by the trial court that an expert witness be licensed in the relevant area of expertise is an illogical and unnecessarily restrictive reading of Rule 702. Southland notes that many competent experts in a variety of fields are career academics who lack a professional license in their area of expertise.

The Tomberlains and the agency cite two cases in support of the trial court's exclusion of Altpeter's testimony. In *Prellwitz*, the court held that a witness who is to give an expert opinion about the standard of care within a particular licensed profession must be licensed in that same profession. *Prellwitz v. Cromwell, Truemper, Levy, Parker and Woodsmale, Inc.*, 802 S.W.2d 316, 317 (Tex.App.—Dallas 1990, no writ). The defendant in *Prellwitz* was a licensed architect and mechanical engineer. The two witnesses that the plaintiff hoped to have testify regarding the standard of care in the defendant's profession were a construction manager/consultant and a marketing manager. The court in *Prellwitz* emphasized that the proffered experts were not even employed in the same field as the defendant and, to un-

derscore the importance of this point, noted that architects and mechanical engineers are required to be licensed, as plaintiff's potential witnesses were not.

Although we believe the rationale of *Prellwitz* to be sound as applied to the facts of that case, there is no authority to support the court's broad assertion that an expert must be licensed in the relevant area of expertise. Neither of the cases cited by the *Prellwitz* court in support of this assertion can fairly be read as imposing such a requirement.[1] *See Shook v. Herman*, 759 S.W.2d 743, 747 (Tex.App.—Dallas 1988, writ denied) (holding that in medical malpractice action, patient must prove negligence through testimony by doctor in same school of practice); *Tijerina v. Wennermark*, 700 S.W.2d 342, 347 (Tex. App.—San Antonio 1985, no writ) (holding that licensed attorney was competent to offer expert testimony on legal standard of care in his locale).

■ A requirement that an expert witness hold a professional license does not comport with the language or purpose of Rule 702. The rule is meant to insure that if specialized knowledge will help the trier of fact examine the evidence, a person who has acquired such knowledge through any one of a number of methods may testify based on that knowledge. *See Trailways, Inc. v. Clark*, 794 S.W.2d 479, 483 (Tex.App.—Corpus Christi 1990, writ denied); *see also* John F. Sutton, Jr. & Cathleen C. Herasimchuk, *Texas Rules of Evidence Handbook: Article VII: Opinions and Expert Testimony*, 30 HOUS.L.REV. 797, 820–24 (1993). Requiring that a witness be licensed in order to testify as an expert is particularly unnecessary in cases in which the expert has previously held a license or comparable certification but for one reason or another has allowed it to expire. *See State v. Taylor*, 721 S.W.2d 541, 551 (Tex. App.—Tyler 1986, writ ref'd n.r.e.). Furthermore, training, education, or experience

---

1. Besides *Prellwitz v. Cromwell, Truemper, Levy, Parker and Woodsmale, Inc.*, 802 S.W.2d 316, 317 (Tex.App.—Dallas 1990, no writ), the other case the Tomberlains rely on to support the license requirement is *Parkway Co. v. Woodruff*, 857 S.W.2d 903, 919 (Tex.App.—Houston [1st Dist.] 1993), *modified on other grounds, aff'd*, 901

S.W.2d 434 (Tex.1995). In *Parkway*, another engineering case, the court merely cites the *Prellwitz* holding, without discussion. Furthermore, during the trial in *Parkway*, there was not even an offer of expert testimony, and thus no exclusion of any such testimony by the court.

in a jurisdiction other than Texas may suffice to qualify a potential witness as an expert in courts of this state. *See Goodwin v. Camp,* 852 S.W.2d 698, 699 (Tex.App.—Amarillo 1993, no writ).

■ Out of the presence of the jury, Altpeter testified that he was licensed until 1987 or 1988 as a Texas solicitor and previously had been licensed in Kansas and Missouri as the equivalent of a Texas recording agent. He testified that he let his licenses expire because he became too busy to sell insurance any longer by virtue of his occupation as a state-approved instructor of continuing education for Texas insurance agents. Specifically, Altpeter has served as senior instructor for Independent Insurance Agents of Texas, as a member of the National Faculty of Certified Insurance Counselors, and as an insurance instructor at the University of Baltimore and a Texas community college. As a state-approved insurance instructor, Altpeter teaches all types of Texas insurance agents, including recording agents, the technical and management skills necessary for the proper performance of their duties.[2] On these facts, we conclude that it was an abuse of discretion for the trial court to exclude Altpeter's expert testimony simply because he did not hold a current license.

■ We must next determine whether the trial court's error in excluding Altpeter's testimony probably caused the rendition of an improper judgment. *McCraw,* 828 S.W.2d at 758. In order to satisfy this standard, the improperly excluded evidence must be controlling on a material issue and not cumulative of other, properly admitted evidence. *Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex. 1994); *Gee,* 765 S.W.2d at 396.

■ Throughout the trial, Southland's primary defense for its failure to promptly investigate and pay the claim was that misrepresentations on the policy application had rendered the policy void and the claim invalid. Out of the presence of the jury, Altpeter testified that after reviewing an extensive amount of material in the case, he was of the opinion that Chuck Tomberlain and the agency did not meet the industry standard of care

in preparing the application. He testified that there were numerous material misrepresentations on the application and that the policy likely would not have been issued had the correct information been provided. He also testified that this conduct by the Tomberlains breached their agency contract with Southland and their fiduciary duties as agents. This evidence was clearly controlling on a material issue of Southland's defense. *See Williams Distrib. Co. v. Franklin,* 38 Tex.Sup.Ct.J. 675, 676, 898 S.W.2d 816, 817 (May 25, 1995). Furthermore, the only other witnesses who offered testimony regarding the standard of care for insurance agents were employees and former employees of Southland, whom the jury may not have viewed as impartial, and who were not presented primarily as experts, as was Altpeter. His controlling testimony thus was not merely cumulative of other, admitted evidence. In addition, the jury heard extensive expert testimony critical of Southland's conduct, but Southland was unable to counter this with Altpeter's expert opinions concerning the company's possible defenses and the bases of its counterclaim and third-party claim. We hold that the trial court erred in excluding Altpeter's testimony and that this error probably caused the rendition of an improper judgment.

■ Southland also maintains that the court erred in excluding from evidence various memoranda prepared by the company during its investigation of the case and in excluding an engineering report prepared by an expert based on his inspection of the house after the fire. The court excluded each of these documents based on the Tomberlains' objections that they constituted inadmissible hearsay. Any error in the exclusion of the evidence was harmless. While the trial court excluded the documents themselves, it did allow both sides to testify freely regarding their contents, and all of the documents' authors were extensively questioned about them during trial.

■ Similarly, Southland contends that the court erred in refusing to admit records pertaining to the financing of Chuck Tomber-

---

**2.** Altpeter even testified that he had taught Chuck Tomberlain in one of his courses.

lain's numerous properties. Southland intended to use this evidence for impeachment purposes to show that the Myrle Street property was partially subject to a lien and that Chuck Tomberlain misrepresented this fact during the investigation of the insurance claim. The Tomberlains objected that the records were irrelevant because they did not pertain to the primary issues in the case and that they were unduly prejudicial to the jury because they showed Chuck Tomberlain's financial dealings with failed savings and loan institutions. The other evidence presented at trial establishes that the fact that there was a partial lien on the property would not have significantly affected either Chuck Tomberlain's or Southland's actions regarding the fire loss claim. The trial court thus did not abuse its discretion in ruling that the prejudicial nature of the records outweighed their probative value.

 Southland contends that the instruction the trial court submitted to the jury on the duty of good faith and fair dealing was a misstatement of the law. When considering a point alleging that a jury charge misstated the law, this court reviews the charge *de novo* in order to determine if the charge was proper. *See M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

The trial court submitted the following question and accompanying instruction to the jury:

**Did Southland Lloyd's Insurance Company fail to comply with its duty of good faith and fair dealing to Chuck Tomberlain?**

A party fails to comply with its duty of good faith and fair dealing when either—

a. without a reasonable basis, it delays payment of a claim; *or*

b. it knew or should have known, based upon its duty to promptly conduct an objective investigation, that there was no reasonable basis for delay.

The jury answered "yes" to the question.

 In order to prevail on a cause of action for breach of the duty of good faith and fair dealing based on an insurer's delay or denial of a claim payment, an insured must prove two independent facts: (1) that the insurer had no reasonable basis for denying or delaying payment of the claim, and (2) that the insurer knew, or should have known, that it had no such reasonable basis. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 18 (Tex.1994); *Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 600 (Tex.1993). Because it used the word "or" rather than "and," the instruction given by the trial court allowed the jury to find that Southland failed to comply with its duty of good faith and fair dealing based on proof of only one of the two required elements. Therefore, under the applicable law, the instruction was clearly improper.

 We must next determine whether the trial court's submission of the erroneous jury instruction amounted to such a denial of Southland's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. TEX. R.APP.P. 81(b)(1). Southland's primary defense in the case was its contention that it was unable to make an informed decision about the reasonableness of Chuck Tomberlain's claim until it investigated all of the relevant facts concerning the claim, including the possibilities of arson and material misrepresentation on the policy application. The instruction given by the court effectively allowed the jury to find that Southland breached its duty to Chuck Tomberlain if, in light of all of the evidence presented at trial, there was no reasonable basis for delaying payment of the claim, regardless of whether Southland was, or should have been, aware of this fact while it was conducting its investigation. *See Lyons,* 866 S.W.2d at 600. An instruction by the court that omits the necessity of proving the second element in a bad faith case risks depriving the insurer of its right to reject invalid claims. *See Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988). In light of the evidence and arguments in this case, the erroneous instruction given by the court created a significant probability that the jury found that Southland breached its duty of good faith and fair dealing without considering whether the company legitimately believed it had a

reasonable basis for delaying payment of the claim. Because such an incomplete verdict probably resulted in the rendition of an improper judgment, we hold that submission of the erroneous instruction constituted reversible error. Furthermore, because all of the other questions submitted to the jury were in some manner made contingent upon question 1, we hold that the entire jury verdict is invalid and must be reversed.

■ Southland also maintains that the trial court erred in submitting to the jury the issue of unfair claim settlement practices, because no private cause of action for such practices exists under Tex.Ins.Code Ann. art. 21.21 (Vernon 1981 & Supp.1996). To support its contention, Southland relies on *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145 (Tex.1994). *Watson,* however, precludes only those claims brought against insurers under section 21.21 by third parties, and specifically permits such claims when brought by insureds against their insurers. *Watson,* 876 S.W.2d at 149. As Southland's insured, Chuck Tomberlain was entitled to assert a cause of action against the company under section 21.21. The trial court therefore did not err in submitting this issue to the jury.

■ Southland further contends that the court erred in allowing the jury to award $23,768.61 in damages for Chuck Tomberlain's expenses in prosecuting the suit, including lost business time and profit. Both the Deceptive Trade Practices Act and the Insurance Code, however, permit recovery by plaintiffs of actual damages, which may include lost profits and income. Act of May 10, 1973, 63rd Leg., R.S., ch. 143, § 1, 1973 Tex.Gen.Laws 322, 326–27, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 5, 1995 Tex.Gen.Laws 2988, 2992–93 (current version found at Tex.Bus. & Com.Code Ann. § 17.50 (Vernon Supp.1996)); Tex.Ins.Code Ann. art. 21.21, § 16(a) (Vernon Supp.1996); *see Allied Towing Serv. v. Mitchell,* 833 S.W.2d 577, 585 (Tex.App.—Dallas 1992, no writ); *Frank B. Hall & Co. v. Beach, Inc.,*

733 S.W.2d 251, 265 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Chuck Tomberlain's pleadings asserted causes of action under both of these statutory provisions. However, inasmuch as this case will be retried, we do not express our approval of allowing recovery for the time and expense of a plaintiff lost by virtue of participation in the trial proceedings.

■ Southland also maintains that the court erred when it awarded in its judgment $1,200.00 in damages pursuant to Tex.Ins. Code Ann. art. 21.55 (Vernon Supp.1996). Because the court gave no explanation for the award beyond the reference to article 21.55, Southland argues that the award was improper. A calculation of the amount of Chuck Tomberlain's insurance claim and the interest which accrued on it until Southland settled, however, makes clear that this award was for interest on the claimed amount, as specifically permitted by article 21.55, section 6. The court did not err in this part of its judgment.[3]

■ Southland contends that the trial court erred in granting numerous directed verdicts in favor of the Tomberlains and against Southland. In reviewing the granting of a directed verdict, this court views the evidence in the light most favorable to the party against whom the verdict was rendered and disregards all contrary evidence and inferences. *Qantel Business Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 303 (Tex. 1988). If the court finds that there is any evidence of probative value which raises a material fact issue, the judgment must be reversed and the case remanded for the jury's determination of that issue. *Id.* at 304.

Southland maintains that the trial court erred in granting the motion for directed verdict on Southland's counterclaims against Chuck Tomberlain and third-party claims against Charles Tomberlain and the Tomberlain Agency. These claims alleged that, in completing and submitting the application for

---

**3.** Southland also contends that the trial court erred in admitting certain evidence pertaining to damages. Although listed as a point of error, this contention is not discussed, or even mentioned, anywhere else in the brief. Points of error not supported by arguments and authorities may be treated as waived. *Fredonia State Bank v. American Life Ins. Co.,* 881 S.W.2d 279, 284–85 (Tex.1994).

fire insurance on the Myrle Street property, the two Tomberlains and the agency breached their fiduciary duties as Southland's agents, breached their agency contracts with the company, and engaged in fraud.

An agency creates a fiduciary relationship as a matter of law. *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 513 (1942); *Sassen v. Tanglegrove Townhouse Condominium Ass'n*, 877 S.W.2d 489, 492 (Tex.App.—Texarkana 1994, writ denied). A fiduciary owes its principal a high duty of good faith, fair dealing, honest performance, and strict accountability. *Kinzbach Tool*, 160 S.W.2d at 514; *Sassen*, 877 S.W.2d at 492. This duty includes an obligation not to conceal matters which might influence the agent's actions to his principal's prejudice. *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex. App.—Tyler 1985, no writ). An insurance agent is liable when he breaches the fiduciary duty he owes the insurer under an agency contract. *American Indem. Co. v. Baumgart*, 840 S.W.2d 634, 639 (Tex.App.—Corpus Christi 1992, no writ). Furthermore, this fiduciary duty becomes especially pronounced when the agent undertakes to write insurance for himself. *Page v. Utah Home Fire Ins. Co.*, 15 Utah 2d 257, 391 P.2d 290, 292 (1964); *see also Commercial Union Assurance Co. v. Winstead*, 213 S.W. 955, 957 (Tex.1919); *Rockford Life Ins. Co. v. Tschiedel*, 61 S.W.2d 536, 537 (Tex.Civ.App.—San Antonio 1933, writ ref'd); *Hanover Fire Ins. Co. v. Shrader*, 11 Tex.Civ.App. 255, 31 S.W. 1100, 1102, *reh'g overruled*, 11 Tex.Civ.App. 255, 32 S.W. 344, *writ ref'd*, 89 Tex. 35, 33 S.W. 112 (1895); 4 GEORGE J. COUCH, COUCH ON INSURANCE 2D § 26A:193 (rev. 1984) (when insuring himself, the agent/insured is under a duty to disclose those facts which he has knowledge of and which he has reason to believe, if brought to the attention of the insurance company, would or might influence the insurer not to approve the policy in question).

The basis of Southland's counterclaim and third-party claim was that Chuck Tomberlain and the agency made misrepresentations on the insurance application that were material to Southland's decision to approve the application. For example, the application stated that the house was twenty-three years old, when it was actually forty-three years old. The application stated that the purchase price was $15,000.00, when in fact it was $13,200.00. The application indicated that the owner occupied the house and also that the insured held title to the property, but in fact Willis was the occupant. The application stated that the agent had inspected the house, but evidence at trial indicated that the house had serious structural deficiencies for some time prior to the application, which an agent would normally report to the company. At trial, Southland officers testified that had Southland had complete information on the house, it would not have issued the policy. The Tomberlains' experts disputed this assertion.

In light of these facts, there was substantial evidence of probative value introduced at trial which raised material fact issues on Southland's counterclaims and third-party claims for breach of fiduciary duty. Furthermore, the evidence adduced by Southland to support its claim for breach of fiduciary duty is equally probative of a claim for breach of contract. *See Sassen*, 877 S.W.2d at 493 (breach of fiduciary duty arising out of contractual agency relationship also constitutes breach of contract). Finally, this evidence also raised factual issues concerning Southland's claim for fraud. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983). We hold that the trial court erred in directing verdicts against Southland on each of these claims.

The trial court also granted Chuck Tomberlain's motion for a directed verdict on his claim that Southland violated article 21.55 of the Insurance Code. In pertinent part, that article provides as follows:

Sec. 2. (a) Except as provided by Subsection (d) of this section, an insurer shall, not later than the 15th day after receipt of notice of a claim or the 30th business day if the insurer is an eligible surplus lines insurer:

(1) acknowledge receipt of the claim;

(2) commence any investigation of the claim; and

(3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant. Additional requests may be made if during the investigation of the claim such additional requests are necessary.

(b) if the acknowledgement of the claim is not made in writing, the insurer shall make a record of the date, means, and content of the acknowledgement.

Tex.Ins.Code Ann. art. 21.55 (Vernon Supp. 1996).[4]

Southland presented evidence raising material fact issues as to each requirement of the statute. Southland's conversation with Chuck Tomberlain when he called to report the fire, coupled with its documentation of that call, raised a fact issue as to whether it properly acknowledged the claim. Furthermore, Southland employees testified that they began investigating the claim shortly after it was reported. Finally, the presence of some evidence that Chuck Tomberlain engaged in fraud and breached his fiduciary and contractual duties to Southland by failing to disclose all material facts pertaining to the property while acting as his own agent in completing the insurance application raised a fact issue as to whether, during the initial statutory period, Southland could reasonably have believed that no documentation would be required directly from the claimant, who in this case was both agent and insured. Also, issues of material fact existed as to whether such requests later became necessary upon further investigation by Southland of the exceptional circumstances surrounding this particular claim, and whether such requests were made and complied with. Because all of the above evidence raised material fact issues that should have been submitted for the jury's determination, the trial court erred in granting a directed verdict on article 21.55 as well.[5]

■ The court imposed liability jointly and severally against Webb and Southland. Webb argues that employees of insurance companies in their individual capacities owe no duty of good faith and fair dealing to insureds. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 698 (Tex.1994). The jury found that he violated article 21.21 of the Insurance Code. This article permits the imposition of liability on any *person* who violates its provisions. Tex.Ins.Code Ann. art 21.21, § 2 (Vernon Supp.1996), § 3 (Vernon 1981). Nevertheless, because we set aside the jury verdict, the court's imposition of individual liability upon Webb, which was based solely on issues submitted to the jury, must be reversed as well.[6]

■ As cross-appellant, Chuck Tomberlain contends that the trial court erred in refusing to treble the damages awarded by the jury. He argues that since the jury found that Southland's and Webb's conduct was committed knowingly, the court was required to impose treble damages under Texas Insurance Code article 21.21, section 16(b).[7] Although this provision has since been amended, at the time relevant to this case, treble damages were mandatory upon a jury finding that the defendant's misconduct was committed knowingly. *State Farm Fire & Casualty Co. v. Gros,* 818 S.W.2d 908, 917

---

4. Despite the wording of subsection (a), section 2 contains no subsection (d).

5. The trial court also granted Chuck's motion for directed verdict on Southland's pleaded defense of "comparative bad faith." On appeal, Southland urges this court to recognize a new defense in bad faith insurance cases, which it calls "comparative bad faith." Southland likens this defense to that of comparative negligence. It suggests no authority to support our adopting such a doctrine, and we decline to do so.

6. Southland contends that the trial court erred in denying its motion to recuse the trial judge who presided at trial. Southland made its motion after the close of the evidence. The motion was based primarily on certain comments that the court allegedly made during trial. The comments complained of, however, do not appear in the statement of facts from trial. It is the appellant's burden to see that a sufficient record is presented to show error requiring reversal. Tex. R.App.P. 50(d). Without record of the incidents complained of, this court is unable to review the contention.

7. Act of March 19, 1985, 69th Leg., R.S., ch. 22, § 3, 1985 Tex.Gen.Laws 395, 395–96, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 13, 1995 Tex.Gen.Laws 2988, 3000–01.

(Tex.App.—Austin 1991, no writ). Because the jury made such a finding in this case, the court was mandated to treble the damages. However, our holding that the entire jury verdict must be reversed renders this point moot.

We sustain Southland's points of error concerning the exclusion of expert testimony, the jury charge on the duty of good faith and fair dealing, and the granting of directed verdicts. All other points of error are overruled.

We reverse the judgment and remand the case for a new trial.