Linda Jo SPIVEY and James Glenn Spivey, Appellants,

v.

Joseph D. JAMES, D.D.S., P.C., Appellee.

No. 06–98–00111–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 11, 1999.

Decided Sept. 8, 1999.

James E. Polk, II, Dallas, for appellant.

Vernon L. Krueger, Harrison & Krueger, Gainsville, Craig L. Reese, Fletcher & Springer, L.L.P., Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION

Opinion by Justice GRANT.

Linda Jo and James Glenn Spivey (Spiveys) appeal from a take-nothing judgment rendered in a trial to the court on their dental malpractice claim against Dr. Joseph James.

This is the second time this case has been before this Court. We reversed summary judgment taken against the Spiveys and remanded the case for trial. In this appeal, the Spiveys contend that the trial court erred by ruling that two of Linda's doctors/witnesses were not qualified as experts and by overruling their motion for new trial based upon the disqualification of their proposed experts. In support of these contentions, the Spiveys contend that findings of fact made by the trial court to support its decision are unsupported by the evidence.

The Spiveys originally claimed negligent dental treatment by Dr. James L. Looney and Dr. Joseph James caused a variety of injuries to Linda's jaw and mouth area.

The evidence shows that Linda consulted Looney about a toothache. Looney determined that Linda needed a root canal. While performing the root canal, Looney

injected sargenti paste[1] into the nerve canal of the affected tooth. There was a leak from the canal which resulted in the permanent deadening of nerves in Linda's jaw and face. Their claim against Looney was concluded by settlement.

In an effort to correct the problem, Linda visited Dr. James for removal of the sargenti paste. The Spiveys alleged that while performing the surgery, James negligently and improperly inserted a device called a bite block into Linda's mouth, stretching her jaw muscles and joints out of place. The Spiveys alleged that the treatment caused injury to Linda's temporomandibular joint (TMJ).

The case went to trial before the court on March 31, 1998. Dr. James obtained a gatekeeper hearing in connection with the Spiveys' proposed expert witnesses: Dr. Jerry L. Mathis and Dr. Michael Joseph Neeley. In parallel orders, the trial court specifically found that the defendant's objections to the qualifications of Mathis and Neeley were meritorious and that the two doctors were not qualified to offer expert testimony against the defendant.

■ The Spiveys contend that the errors made by the trial court in refusing to qualify their proffered witnesses as experts are such that they resulted in an unfair verdict. The standard for reviewing the trial court ruling requires a finding that the trial court abused its discretion by refusing to permit witnesses to testify and, if so, we must determine if the error probably caused the rendition of an improper judgment.

■ Tex.R. Evid. 702 provides

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The determination of whether an expert witness is qualified to testify is left largely to the trial court's discretion, and we will not disturb it on appeal absent a showing that the court abused that discretion.[2] In determining whether an abuse of discretion occurred, we look to see whether the trial court acted without reference to guiding principles or rules.[3] A reviewing court cannot conclude that a trial court abused its discretion merely because it would have ruled differently.[4]

■ The proponent of the expert bears the burden of showing that the expert witness's testimony is qualified, relevant to issues in the case, based upon a reliable foundation, and will assist the trier of fact.[5] The offering party is required to establish that the expert has the knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.[6] In addition, the underlying foundation upon which that opinion is based must be reliable.[7]

In *Broders v. Heise*,[8] the plaintiff had sought to qualify a doctor as an expert

---

1.  Sargenti paste is a form of formaldehyde.

2.  *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995); *Hall v. Huff*, 957 S.W.2d 90, 100 (Tex.App.-Texarkana 1997, writ denied); *Southland Lloyd's Ins. Co. v. Tomberlain*, 919 S.W.2d 822, 826 (Tex.App.-Texarkana 1996, writ denied).

3.  *du Pont*, 923 S.W.2d at 558.

4.  *du Pont*, 923 S.W.2d at 558; *Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 932 (Tex.App.-Texarkana 1997, writ denied).

5.  *du Pont*, 923 S.W.2d at 556.

6.  *Broders*, 924 S.W.2d at 153.

7.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *du Pont*, 923 S.W.2d at 557.

8.  924 S.W.2d 148.

witness on the question of treatment of an injury to the brain. The Court applied the analysis, concluding that the mere fact that the expert was an emergency room physician, as were the defendants, was insufficient to qualify him as an expert on injuries to the brain. The proposed expert obviously possessed knowledge and skill not possessed by people generally, but the Court recognized that this does not in and of itself mean that such expertise will assist the trier of fact regarding the particular issue before the Court. The defendants provided two neurosurgeons who testified that the type of injuries sustained by the woman were untreatable. The Court held that the plaintiffs had not provided sufficient information to show that their witness was an expert qualified to testify on the issue of cause-in-fact. Thus, the Court concluded that the trial court did not abuse its discretion by disallowing his testimony.

A similar situation was addressed by this Court in *Hall v. Huff*, 957 S.W.2d 90, 98–101 (Tex.App.-Texarkana 1997, writ denied). In that case, we held that a doctor who was an internist and specialist in pulmonary diseases, infectious diseases, critical care, and advanced internal medicine, and who had taught several nursing courses, including management of critical care patients, was generally qualified to testify about the standards of care of nursing. Specifically, the expert was to testify about the standard of care for cardiac catheter placement and diagnosis and emergency treatment of cardiac tamponade. He also testified that he was familiar with nursing standards promulgated in the Joint Commission on Accreditation of Health Care Organizations. The trial court granted summary judgment against the plaintiffs, refusing to consider the doctor's testimony because the doctor was not qualified as an expert witness. Because there was proof of his expertise in the particular areas involved in the case, we concluded that the trial court had abused its discretion by refusing to qualify him as an expert witness.

In the present case, we look to the qualifications of the two individuals who the Spiveys attempted to qualify as expert witnesses. The defendant, Joseph James, D.D.S., is an oral surgeon. The claim against him alleged that he had improperly conducted the oral surgery by misuse of a device called a bite block, which is used to stabilize and stretch the jaws of the patient so that the surgeon can operate.

Through an excerpt from a deposition, the Spiveys introduced evidence that Dr. Mathis has been a licensed dentist since 1977, and practiced dentistry until August 1993. At that time, Mathis enrolled in medical school at the University of Texas Health Science Center in San Antonio where, at the time of the deposition, he was a third-year medical student. Mathis stated that he had used bite blocks regularly during his dental practice for a number of procedures and testified about the proper use of the block at some length. Based upon his conclusion that the block was improperly forced into position, he opined that James was probably negligent and had caused permanent injury to Linda. Mathis had not examined Linda, but relied upon his review of her medical records and her deposition testimony in reaching his conclusions.

Mathis stated that he was familiar with the standard of care for a reasonably prudent dentist using a bite block during surgery. He stated that a dentist using a bite block should ensure that the bite block is placed in a comfortable position for the individual patient. Mathis stated that the failure to meet this standard of care creates a risk of a dislocation of the TMJ joint, and stretching of TMJ joint ligaments and associated muscles of mastication. Applying these principles to the case at hand, Mathis concluded that Dr. James breached the standard of care and thereby caused Linda's TMJ disorder.

In support of their effort to qualify Dr. Michael Neeley as an expert, the Spiveys provided evidence that Neeley had gradu-

ated from the Baylor College of Dentistry with a Doctorate of Dental Surgery in 1976 and had been a licensed dentist in the State of Texas since 1976, maintaining a full-time dental practice. He stated that approximately fifteen percent of his dental practice involved the treatment of TMJ disorders. He also stated that he had a personal interest in the area and that he had attended several seminars that addressed this area of practice, that he had attended mini-residency or hands-on courses on the subject, that he had lectured on the topic, and that he had studied the subject in an apprenticeship format. He further stated that he had taken courses from various institutions that related to the topic, including the University of Texas Health Science Center in San Antonio. Neeley also stated that he was a member of organizations that provided information on TMJ problems: The American Association of Orthodontists; Dallas County Dental Society; American Dental Association; American Academy of General Dentistry; International Collect of Craniomandibular Orthopedists; American Academy of Head, Neck and Facial Pain.

In the substance of his proposed testimony, Neeley stated that Dr. James breached his duty of ordinary care by failing to consult with Linda about the positioning of the bite block. This breach resulted in Linda's TMJ disorder. He also stated that James failed to properly treat Linda during the postoperative period. The Spiveys sought to introduce evidence which included a letter from Neeley to Farmers Insurance Group evaluating Linda's condition. Neeley conducted an independent examination of Linda. This letter documented serious and permanent damage to Linda's jaws. The letter stated, "It is my opinion that the TMJ problems that [Linda] has experienced are directly related to the surgery that was performed by Dr. James and the manner in which he extracted that tooth and took out the paste that was there." Neeley also concluded that Looney's root canal could not have caused Linda's TMJ problems. Neeley

also stated in connection with his knowledge of this particular case that he had examined the plaintiff, taken her medical history, reviewed her medical records and x-rays, as well as reviewed her deposition.

■ Both of the proposed witnesses had been trained in dental school concerning the use of bite blocks. However, Dr. Mathis was not trained in dental surgery and was not in a position to testify as to the necessity of the use of dental blocks during surgery and the possible necessary risk of having to use a bite block during such surgery. Only one percent of his practice involved treatment of TMJ disorders. We conclude that the trial court did not abuse its discretion in determining that Mathis was not properly qualified to reach the conclusion concerning the standard of care during dental surgery.

■ On the other hand, Dr. Neeley had the same degree as Dr. James. Both had a doctorate of dental surgery from Baylor College of Dentistry. Although Neeley has not practiced in the surgical field, he is trained and has a degree in dental surgery, he has practiced dentistry for twenty-one years, with fifteen percent of his practice devoted to the treatment of TMJ. He has developed a specific interest in the field and has endeavored to further his knowledge in the area of TMJ by attending seminars, sometimes week-long courses, and continues to study TMJ on his own. His interest in the field started when he was a TMJ patient himself. Because Dr. Neeley is educated in the field of dental surgery, has continuing education specifically involving the TMJ disorder, was trained in the use and possible injuries of the bite block, and has maintained approximately fifteen percent of his dental practice involving TMJ disorders, as well as the other factors mentioned in our discussion of his educational background and experience, we find that the trial court abused its discretion in holding that Neeley was not qualified as an expert to testify in this case.

Each case must be analyzed to determine if the exclusion of evidence produced harm to the complainant.[9]

After reviewing the entire record, we find that the testimony of Dr. Neeley was essential to establishing *prima facie* elements of the Spiveys' case; thus, the exclusion of that testimony was harmful, calculated to cause, and probably did cause the rendition of an improper judgment.[10]

The judgment of the trial court is reversed, and this cause is remanded for trial.

## ON REHEARING

On rehearing, counsel for appellee now urges this Court to consider, as a part of the proof to be considered in deciding whether the Court reached erroneous conclusion in its gatekeeper hearing, a deposition of Dr. Neeley that was taken after the trial in this case was complete. The deposition was taken by the appellant not only after the conclusion of the gatekeeper hearing, but also after the trial itself. The appellant has delivered the deposition to this Court in the form of a part of the reporter's record, although it was not presented to the trial court and was not taken before the court. In his original brief, appellee took the position that the deposition was not properly before this Court as a part of the appellate record because it is not a bill of exceptions as appellant contended. In an evidentiary context, a bill of exceptions exists when a trial court refuses to admit evidence and counsel then provides that evidence for appellate review. *See* Tex.R.App. P. 33.2. When providing a bill of exceptions, further, the evidence must have been presented to the trial court at trial or no error is shown. *See Clone Component Dist. of Am., Inc. v. State*, 819 S.W.2d 593, 596 (Tex.App.-Dallas 1991, no pet.); 6 McDonald & Carlson, Texas Civil Practice § 17:4 (2d ed.1998).

In this case, the trial court did not refuse to admit the deposition into evidence. Thus, there was no ruling from which to appeal. Indeed, he could not have done so because it did not exist either at the time of the gatekeeper hearing or at the time of the trial. Thus, the court could not have considered it. The deposition is not a proper bill of exceptions and is not a proper part of the appellate record in this case.

---

**9.** *Ponder v. Texarkana Mem'l Hosp., Inc.*, 840 S.W.2d 476, 479 (Tex.App.-Houston [14th Dist.] 1991, writ denied).

