NO. 07-03-0081-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 11, 2004

_____

IN THE MATTER OF THE MARRIAGE OF
WALTER CHARLES BROGAN, III AND TINA MARIE BROGAN
AND IN THE INTEREST OF WILLIAM CHRISTOPHER BROGAN
AND SHAUN PATRICK BROGAN, MINOR CHILDREN

_____

FROM THE COUNTY COURT AT LAW NUMBER TWO OF LUBBOCK COUNTY;

NO. 2001-514,816; HONORABLE DRUE FARMER, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

**MEMORANDUM OPINION**

Presenting four issues, appellant Tina Marie Brogan contends the trial court erred in failing to enforce a settlement agreement between her and her husband, Walter Charles Brogan and abused its discretion in making its division of the property and setting the amount of child support. By her issues, she contends the trial court (1) erred in finding the settlement agreement was neither a settlement agreement nor a partition and exchange

agreement, (2) abused its discretion in failing to properly value a majority of both community and separate estate property, (3) abused its discretion in awarding only $1,500 in child support, and (4) erred in striking her supplement to counterclaim and answer to Charles's current pleading insofar as it pled causes of action by Brogan, Ltd. against Brogan, P.A. We affirm.

Tina and Charles were married on May 25, 1991, and two children were born of the marriage. Charles filed his petition for divorce on August 7, 2001. The case was set for a non-jury trial on May 7, 2002, and following a recess, additional evidence was received until the parties rested and closed on July 2, 2002. The trial court signed the decree of divorce on December 6, 2002, which was followed by Tina's request for findings of fact and conclusions of law, which were filed by the trial court on August 6, 2003. Before we commence our analysis, we first set out the standard of review in a non-jury trial.

## Standard of Review

Findings of fact in a bench trial have the same force as a jury's verdict upon jury questions. City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex.Civ.App.-- Houston [14th Dist.] 1977, writ ref'd n.r.e.). However, the findings are not conclusive when a complete statement of facts appears in the record if the contrary is established as a matter of law or if there is no evidence to support the findings. Middleton v. Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex.App.--Houston [14th Dist.] 1985), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex. 1985) (per curiam). Findings of fact are reviewable for factual and legal

sufficiency under the same standards that are applied in reviewing evidence supporting a jury's answer. Zieben v. Platt, 786 S.W.2d 797, 799 (Tex.App.--Houston [14th Dist.] 1990, no writ); *see also* W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 ST. MARY'S L.J. 1045, 1145 (1993).

Our review of trial court conclusions of law is *de novo.* In re Humphreys, 880 S.W.2d 402, 403 (Tex. 1994), *cert. denied*, 513 U.S. 964, 115 S. Ct. 427, 130 L. Ed. 2d 340 (1994). However, as noted above, although findings of fact are reviewable for legal and factual sufficiency, an attack on the sufficiency of the evidence must be directed at specific findings of fact rather than at the judgment as a whole. In re M.W., 959 S.W.2d 661, 664 (Tex.App. --Tyler 1997, writ denied). Further, the rule has often been otherwise stated that if the trial court's findings of fact are not challenged by a point of error on appeal, they are binding upon the appellate court. Northwest Park Homeowners Ass'n, Inc. v. Brundrett, 970 S.W.2d 700, 704 (Tex.App.--Amarillo 1998, pet. denied); Carter v. Carter, 736 S.W.2d 775, 777 (Tex.App.--Houston [14th Dist.] 1987, no writ).

## Settlement Agreement

By her first issue, Tina actually presents two contentions. First, she contends the finding of fact that the Brogan Settlement was neither a settlement agreement nor a partition and exchange agreement is against the great weight and preponderance of the evidence. By her second contention, she asserts there was insufficient evidence to support the court's finding that the Brogan Settlement was unenforceable. We disagree.

3

## Second Contention

Tina argues the evidence was insufficient to support the court's finding that the Brogan Settlement was unenforceable. However, in America's Favorite Chicken Co. v. Samaras, 929 S.W.2d 617, 622 (Tex.App.--San Antonio 1996, writ denied), the court held that whether an agreement is legally enforceable or binding is a question of law. *See also* Ronin v. Lerner, 7 S.W.3d 883, 886 (Tex.App.–Houston [1st Dist.] 1999, no pet.). Tina's second contention is overruled.

## First Contention

Without advice or any assistance from counsel or others, on November 11, 2001, Tina and Charles prepared and signed a two and one-half page written document entitled "Brogan Settlement." The writing can best be described as a "homemade" document organized in two sections.[1] By the first section, Charles agreed to

- pay $9,000 child support until youngest son graduates from high school or is 18;
- pay private school tuition for the children;
- pay health insurance until the sons enter college or longer;
- put aside money for their college education as possible;
- pay their psycologist's (sic) bills until deemed no longer necessary by their provider;
- upon the "understanding" that Tina will voluntarily reduce the "amount" by whatever her take-home pay is when she becomes employed; and

---

[1] In all material respects, the document is set out verbatim.

4

- upon remarriage, co-habitation, or sale of 9111 Salem Drive, support will decrease to 1/2 or $5,000 per month, whichever is larger.

By the second section, the parties provided for a split of their community property as follows:

- all business entities become the property of Charles; HRT, Prevention Works, and W. Chuck Brogan, III, M.D. Ph.D., including house at 4612 13th St. and business property at 4110 22nd Place;
- contents of 3310 31st St. become the sole property of Charles;
- 9111 Salem become the property of Tina Brogan;
- contents of 9111 Salem will be split as mutually agreed upon;
- personal bank accounts remain personal;
- amount in the joint checking account and savings account will be the property of Tina Brogan;
- Charles Brogan and Tina Brogan retain their life insurance policies as their sole and separate property;
- regarding Brogan, Ltd.:

  Charles to buy 4110 22nd Place from the Ltd. for $85,000 above the construction loan amount currently owed to American State Bank and will pay the taxes currently owed.

  Tina will retain ownership of 9109 Salem Drive and 3110 31st Street.

The agreement concluded:

[t]he stock account as currently held by Paine Webber (Rolf Siebert, broker) will be split 50/50, share for share. The parties agree to will their portions to their children, William C. Brogan and Shaun P. Brogan.

5

Thereafter, the Brogan Settlement was delivered to a neutral attorney who drafted and prepared documents, deeds, agreements, partnership dissolution agreement, and other documents to implement the plan. The documents prepared by the neutral attorney were dated December 31, 2001, and signed by Charles; however, Tina did not sign them until January 22, 2002, and testified that she was willing to sign the decree at the hearing on June 17. Upon Tina's refusal to sign the decree of divorce and documents, Charles deemed the agreement not binding and proceeded with the divorce. By her brief, Tina contends the agreement purported to be a final resolution of the issues addressed and nothing was left to further negotiation, except the execution of documents.

To encourage the settlement of marital property divisions the Legislature authorized written agreements "concerning the division of the property and the liabilities of the spouses and maintenance of either spouse." Tex. Fam. Code Ann. § 7.006 (Vernon 1998). However, the statute provides that either spouse may repudiate the agreement before the divorce. Also, section 7.006 provides that the written agreement is not binding upon the court unless it finds that the terms of the written agreement are just and right. Moreover, the trial court is not bound by the parties' written agreement which does not purport to settle the entire property division. Finn v. Finn, 658 S.W.2d 735, 747 (Tex.App.--Dallas 1983, writ ref'd n.r.e).

Written property settlement agreements as authorized by section 7.006 are governed by general contract law. Deen v. Deen, 631 S.W.2d 215, 217 (Tex.Civ.App.--

6

Amarillo 1982, no writ). As we noted in Sourignavong v. Methodist Healthcare Sys., 977 S.W.2d 382, 385 (Tex.App.--Amarillo 1998, no pet.), a meeting of the minds of the parties is essential to the creation of a valid contract. Accordingly, the court may not make a contract for the parties, and an agreement which is subject to future negotiations is not binding upon the parties. *See* Fort Worth Indep. School Dist. v. Fort Worth, 22 S.W.3d 831, 846 (Tex. 2000); *see also* Central Texas Micrographics v. Leal, 908 S.W.2d 292, 296 (Tex.App.--San Antonio 1995, no writ).

The intention of the parties to an agreement is normally a question of fact. *See* Scott v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 555 (Tex. 1972). *Also see,* Ishin Speed Sport, Inc. v. Rutherford, 933 S.W.2d 343, 348 (Tex.App.--Fort Worth 1996, no writ). However, whether an agreement is legally enforceable is a question of law. *Ronin*, 7 S.W.3d at 886. Because Tina attacks the factual sufficiency of an adverse finding on which she had the burden of proof, she must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. After considering all the evidence, a court of appeals may only set aside the finding if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Dow Chemical Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); *see also* Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

By her brief, Tina carefully reviews the evidence regarding hers and Charles's intentions regarding the agreement prepared by them without the assistance of counsel.

7

Notwithstanding the able analysis, it fails to overcome the several flaws and deficiencies which renders the document incomplete and unenforceable.

**Liabilities.** Section 7.006 requires that the written agreement must also cover the liabilities of the parties. However, the November 24, 2001 document does not address allocation of liabilities which, according to the record, are significant. Further, it does not attempt to cover the ordinary income tax liability for the year 2001 and the potential income tax liability which may have been brought about as a result of a property division and dissolution of a partnership.

**All Property**. Under *Finn*, 658 S.W.2d at 747, the trial court is not bound by an agreement which does not purport to settle the entire property. Here, a comparison of the property mentioned in the November 24, 2001 document with the property and assets reflected by the record and the decree demonstrates that the automobiles, investment retirement accounts, one note receivable, and significant accounts receivable were not covered. Moreover, the office furniture and equipment, computer software, and medical equipment described as community property in the findings of fact were not covered either.

**No Residuary Clause.** As used in a property settlement agreement incorporated into a decree of divorce, a residuary clause may be effective to transfer property not specially set aside to either party, to the spouse as designated in the residuary clause. *See* Buys v. Buys, 924 S.W.2d 369, 371 (Tex. 1996). Here, however, even though the

8

agreement did not address all the property, because of the absence of a residuary clause, the homemade agreement was an incomplete division of the property of the parties.

**Paine Webber Account.**  By the final section, the parties stated that the stock account at Paine Webber would be "split 50/50, share for share.  The parties agree to will their portions to their children. . . ."  This provision presents considerable uncertainty.  Did the parties intend to make a contract to make a will and be bound by the contract, or did the parties contemplate that the stock would be held by them as life tenants, with the remainder to the children?[2]

**Funds for College.**  The amount of money which Charles would set aside for the college education of the children was contingent and the amount not designated.

We have not overlooked Tina's contention that the document constitutes a partition of community property according to section 4.103 of the Family Code.  However, the word "partition" does not appear in the document but instead, speaks of "splitting" community property and providing for child support, medical insurance, and education for the children.  These provisions are foreign to a partition of property but instead, indicate an intention that the agreement is incident to a divorce, not a partition.  Moreover, many of the flaws and deficiencies noted above also apply to any agreement, partition, or otherwise.

---

[2]Provisions for life estates in personalty are not favored. Bridges v. First National Bank in Dallas, 430 S.W.2d 376, 382 (Tex.Civ.App.--Dallas 1968, no writ).

Accordingly, considering the evidence and controlling law, we do not find that the finding by the trial court that the Brogan Settlement was neither a settlement agreement nor a partition and exchange agreement is contrary to the great weight and preponderance of the evidence or that it is clearly wrong and unjust. Issue one is overruled.

By her second issue[3] Tina contends she was harmed by the property division of the parties' community estate because the trial court abused its discretion by failing to properly value a majority of both community and separate estate property.[4] We disagree.

Because most appeals of family law cases terminate in a court of appeals, we take this opportunity to revisit familiar rules as presented in a decision of the Texas Supreme Court. In Murff v. Murff, 615 S.W.2d 696, 700 (Tex. 1981), the Supreme Court concluded:

> [t]he trial court in a divorce case has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic. As the trier of fact, the court is empowered to use its legal knowledge and its human understanding and experience. Although many divorce cases have similarities, no two of them are exactly alike. Mathematical precision in dividing property in a divorce is usually not possible. Wide latitude and discretion rests in the trial court and that discretion should only be disturbed in the case of clear abuse.

---

[3]Issue restated for purposes of our analysis.

[4]Tina complains of the value assigned to (a) Baker Seibert Stock Account at $780,000; (b) finding that household furnishings in her possession were worth $150,000; (c) finding that books in her possession were worth $50,000; (d) finding leased equipment was a liability of $666,512.39, and (e) finding that line of credit owed by Brogan P.A. was $393,796.76 at the time of divorce.

Equality in the division of property is not required and under *Murff*, this Court indulges every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate. *Id*. at 698; Johnson v. Johnson, 948 S.W.2d 835, 838 (Tex.App.--San Antonio 1997, pet. denied). The trial court is required to divide the property in a manner that is just and right. To assist the trial court, the parties have the responsibility to provide evidence of the value of the property. Wallace v. Wallace, 623 S.W.2d 723, 725 (Tex.Civ.App.--Houston [1st Dist.] 1981, writ dism'd). Tina has a heavy burden to show from the evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. Wilson v. Wilson, 44 S.W.3d 597, 600 (Tex.App.-- Fort Worth 2001, no pet.); *Wallace*, 623 S.W.2d at 725*.*

Baker Seibert Account

Although Tina does not challenge the trial court's finding that 90 percent of the account was her separate property and that Charles had a separate property interest of 10 percent, she contends the value of the account was only $510,000. As a result, she argues she was harmed by the trial court's error in fixing the value. We disagree. Because a trial court cannot divest a spouse of separate property, Eggemeyer v. Eggermeyer, 554 S.W.2d 137, 139-40 (Tex. 1977), and did not disturb her proportionate interest in the account, the value of the account is of no consequence for these purposes. Even if the trial court's finding of value was erroneous, a question we need not decide, Tina was not prejudiced or harmed by any overestimation of its value because her 90 percent was

11

awarded to her. Pelzig v. Berkebile, 931 S.W.2d 398, 403 (Tex.App.--Corpus Christi 1996, no writ).

## Household Furnishings and Books
## and Leasing and Evaluations

Tina recognizes that where the value of property is uncontested or even if contested, the trial court does not abuse its discretion as long as the value assigned to the asset is within the range of the evidence. *Pelzig*, 931 S.W.2d at 398. In her review of the evidence of the household furnishings, jewelry, and books in her possession, among other things, Tina referenced values which she placed on some of the items in her answers to interrogatories. She does not refer to the record where such evidence can be found and the clerk's record does not include Tina's answers to interrogatories. However, it appears the trial court accepted the estimates or evidence offered by Charles. In response, Tina argues that the purchase price of the jewelry or art work does not constitute market value for these purposes. However, the estimates and opinion of Charles were admitted without any objection and thus were before the trial court for all purposes. Tex. R. Evid. 103(a); *see also* Lubbock County, Tex. v. Strube, 953 S.W.2d 847, 855 (Tex.App.--Austin 1997, pet. denied). Moreover, the admission of evidence is a matter of discretion, and error is not subject to reversal in the absence of a showing that the error was calculated to cause and probably did cause rendition of an improper judgment. Exxon Corp. v. West Texas Gathering Co., 868 S.W.2d 299 (Tex. 1993).

12

Focusing now on the liabilities of the community estate for equipment leases totaling approximately $666,000, Tina contends that in reality, although entitled as Equipment Leases, because Charles has a right to purchase the equipment at the end of the lease term for a suggested nominal amount, we should remand to the trial court for an evaluation of the value of the equipment covered by the leases. However, under *Wallace*, 623 S.W.2d at 725, Tina had the burden to provide evidence of the value of the property, but the record does not demonstrate that she offered any evidence of the value of the equipment upon termination of the leases. *Wilson*, 44 S.W.3d at 600.

Finally, the trial court found Charles owed $393,796 on his line of credit to the bank. Tina points out, however, that the banker testified the line had been reduced from $500,000 to $311,000 which, if correct, would be an excess liability of $72,000. However, even if $72,000 is added to Charles's award of community property, the adjusted awards would be $176,805 to Charles and $640,275 to Tina. Compared to the values and award here, any such adjustment is *de minimis*. Accordingly, considering that mathematical precision is not required and other factors discussed above, we conclude Tina has not met her burden to show from the evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. Issue two is overruled.

By her third issue, Tina contends the trial court abused its discretion in awarding only $1,500 in child support. We disagree. Tina grounds her argument upon an incorrect premise when she argues:

13

> [a]ssuming that the trial court ignored all of Tina's testimony regarding the minimal reasonable needs of the children, the only other evidence in the record concerning the need of the child is Dr. Brogan's exhibit 29A.

To the contrary, we do not assume the trial court ignored any evidence but instead, we extend every reasonable presumption to the proper exercise of discretion by the trial court consistent with the record. Huls v. Huls, 616 S.W.2d 312, 315 (Tex.Civ.App.--Houston [1st Dist.] 1981, no writ).

Further by section 10 of the decree, the trial court ordered Charles to pay $1,500 per month to Tina as child support. Then by section 11, entitled "Additional Child Support-School Tuition" the court ordered Charles to pay the All Saint's School tuition through high school. In addition, by section 12 entitled "Medical Support," Charles was ordered to provide medical support and health insurance. According to the evidence, the tuition was approximately $1,982 per month. The medical expenses were calculated at $118 (medical insurance), plus one-half of other medical, psychologist, and dental expenses. In total, the trial court ordered Charles to pay $3,420, plus the medical insurance and associated dental and medical expenses per month. Considering that the trial court found that Tina has specialized training and work experience and is capable of employment and that the total amount of the support ordered to be paid is within the guidelines set out in section 154.126 of the Family Code, we conclude the support award was not an abuse of discretion by the trial court. Issue three is overruled.

By her fourth issue, Tina contends the trial court erred in striking her supplement to counterclaim and answer to petitioner's current pleadings insofar as it pled causes of action by Brogan, Ltd. against Brogan P.A. We disagree.

By her brief, Tina alleges that Brogan, Ltd., a limited partnership, bought the property at 4110 22nd Street based upon an agreement by Brogan P.A., a professional association, to lease the property for 10 years and pay a rent of $36,000 per month. Without joining Brogan Ltd. or Brogan P.A. as parties, by her supplemental counterclaim, she alleged that she anticipated a breach of the agreement and requested the court to either compel execution of the lease by Brogan, P.A. by specific performance or damages. Counsel for Charles objected to the pleading contending the limited partnership and the professional association had not been made parties.

Citing Schlueter v. Schlueter, 975 S.W.2d 584 (Tex. 1998), Tina argues that her action for fraud should be litigated in this action. While the Court did hold that there is no independent tort cause of action between spouses for damages to the community estate, that rule does not make the trial court's action reversible error for several reasons. First, Brogan Ltd. and Brogan P.A. were not made parties to the suit. Second and more important however, *Schlueter* did not bar Tina's presentation of evidence claiming fraud on the community through the "just and right" provision. However, Tina did not attempt to offer any evidence and the court's ruling did not bar any such evidence. Moreover, because Tina did not make a formal bill of exception and present any evidence as required

15

by Rule 33.2 of the Texas Rules of Appellate Procedure, this issue was not preserved for review.  *See* Spivey v. James, 1 S.W.3d 380, 385 (Tex.App.--Texarkana 1999, pet. denied).  Issue four is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Quinn, J., not participating.