**AMERICAN INDEMNITY COMPANY, Appellant,**

v.

**Ernest H. BAUMGART, Jr., Individually and D/B/A City Insurance Service, Appellee.**

**No. 13–91–420–CV.**

Court of Appeals of Texas, Corpus Christi.

Sept. 9, 1992.

Rehearing Overruled Nov. 19, 1992.

Philip Griffis, George W. Vie, III, Galveston, for appellant.

James F. Martin, Houston, for appellee.

Before NYE, C.J., and KENNEDY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

NYE, Chief Justice.

This is a suit by an insurer, American Indemnity Company, against its local recording agent, Ernest H. Baumgart, individually and d/b/a City Insurance Service (collectively hereinafter called Baumgart), to recover damages for defending and settling a personal-injury claim brought against its alleged insureds. American sued Baumgart for indemnity, violations of the Texas Insurance Code, the DTPA,[1] negligence, breach of contract, and fraud. Baumgart moved for summary judgment based upon no cause of action. The trial court granted a partial summary judgment, ordering that American take nothing on all of its claims save its indemnity claim. The trial court severed American's indemnity claim from its other claims. By one point of error, American complains that the trial court erred in granting partial summary judgment. We reverse and remand.

American alleged that about April, 1984, Baumgart obtained auto insurance coverage for John Ventura and his wife, Jane Ford (the Venturas). This insurance was written through the Travelers Insurance Company, and the Venturas continued to renew this insurance every six months. On October 29, 1985, Baumgart's employee, Kathleen Wick, renewed the Ventura's auto insurance policy. This six-month policy, referred to as the Travelers Policy, would have expired in April, 1986.

About November 1, 1985, Ms. Ford leased a 1986 Oldsmobile. She told Ms. Wick about the Oldsmobile, and Ms. Wick represented to her that their Travelers Policy covered it. On November 1, 1985, Ms. Wick sent a "change order" to Travelers, requesting that it add the Oldsmobile as an additional insured vehicle to the Travelers Policy. She also requested that Travelers increase the liability limits on the Oldsmobile.

On November 15, 1985, Ms. Wick received a letter from Travelers, stating that it would not increase liability exposure for the Venturas' account and that the Venturas' file had been marked for non-renewal due to their driving records and loss activity. After receiving the letter, Ms. Wick notified Ms. Ford about the problem. Ms. Ford instructed Ms. Wick to place coverage on the Oldsmobile with another carrier.

About November 20, 1985, Ms. Wick *deleted* the Oldsmobile from the Travelers Policy and sent an application for insurance on the Oldsmobile, which included an auto binder, to American. By mailing the insurance application, Baumgart acted within his authority as a local recording agent and bound coverage on the Oldsmobile with American for thirty days following the application's effective date of November 20, 1985. The application's terms provided that binder coverage would expire without further notice thirty days from the effective date shown on the application, unless sooner superseded by a formal insurance policy or a rejection.

Ms. Wick, Baumgart's employee, allegedly made many omissions and misrepresentations of material fact in the insurance application, including: driver data; underwriting data material to assessment of the risk; the purposes for making the application; and the Ventura family's driving record.

On December 6, 1985, American sent Baumgart its rejection of the Venturas' application. The rejection confirmed that binder coverage would end as of 12:01 a.m. on December 20, 1985 (thirty days after the effective date of the binder). (American pointed out in its pleadings that as of December 20, 1985, the Oldsmobile was left uninsured because it had rejected coverage, the binder coverage had expired, and Ms. Wick, Baumgart's employee, had negligently deleted the Oldsmobile from the original Traveler's Policy.)

On December 31, 1985 (about ten days after American's binder coverage expired), Louis Rousset,[2] one of the Venturas' contemplated drivers, was driving the Oldsmobile in Brownsville when it was involved in

---

1. Tex.Bus. & Com.Code Ann. §§ 17.41–63 (Vernon 1987 & Supp.1992).

2. Louis Rousset was the manager of the Venturas' law firm in Brownsville, Texas.

a collision. Sergio Martinez was injured. Martinez sued Mr. Rousset, the Venturas, and the Venturas' law firm (the *Martinez* defendants). On January 2, 1986, Ms. Wick submitted a loss notice to American. American reminded her that the Venturas' application had been rejected and that the Oldsmobile was not covered. Baumgart, however, did not notify the Venturas that American had rejected their application until *after* the collision had taken place. (American pointed out in its pleadings that had Ms. Wick not deleted the Oldsmobile from the Travelers Policy, the car would have been covered at the time of the collision.)

While expressly denying and reserving its rights to assert the existence of any liability in connection with the above-stated events, American undertook a good-faith defense of the *Martinez* suit. On March 18, 1988, American entered into a Compromise and Settlement Agreement of the *Martinez* suit. As part of the settlement, Mr. Martinez released his causes of action against the *Martinez* defendants and American.[3] American, in turn, paid $100,-000 to Mr. Martinez to settle the suit. Thereafter, the Venturas executed an Assignment in which they assigned to American all of their potential claims against Baumgart, the recording agent.

Pursuant to the Assignment, American sought indemnification from Baumgart for at least $100,000, *in addition* to the claims accruing to American directly against Baumgart. Individually and through the assignment, American alleged that Baumgart was negligent and that his negligence

proximately caused damages in the amount expended to defend and settle the *Martinez* suit. American also asserted claims against Baumgart for violations of the Texas Insurance Code, the DTPA, fraud, and breach of contract.

■ By a single point of error, which includes five sub-points, American complains that the trial court erred in granting partial summary judgment. By sub-point one, American argues that the trial court erred in holding that it could not assert the Venturas' claims against Baumgart. Baumgart contended that American could not assert the Venturas' claims because: (1) the assignment was void as against public policy; (2) the Venturas did not have any damages; and (3) the election of remedies doctrine barred the Venturas' claims.

Concerning the assertion that the assignment was void, Baumgart contended that American had "settled" its liability to the Venturas when it provided them with a defense in the *Martinez* suit and paid the $100,000 to Sergio Martinez. Baumgart contended that the assignment was void because Texas law does not allow a joint tortfeasor (American) to purchase a claim from a plaintiff (the Venturas) to whose injury the tortfeasor contributed. *See International Proteins Corp. v. Ralston–Purina Co.*, 744 S.W.2d 932, 934 (Tex. 1988);[4] *Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19, 21–22 (Tex.1987).[5]

■ In the present case, Baumgart did not prove, as a matter of law, that he and American were joint tortfeasors. Further, a cause of action is a property right and may be assigned, except when a statute

---

3. Although American was not a party to the *Martinez* suit, it was made a party to the Compromise and Settlement Agreement.

4. In *International Proteins,* the Supreme Court held that public policy did not permit a joint tortfeasor to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed and by that purchase, obtain a right to reimbursement or contribution from a non-settling joint tortfeasor when no such right exists at common law or under the Texas comparative negligence statutes.

5. In *Jinkins,* the Supreme Court held that a defendant can only settle his proportionate share of community liability and cannot pre-

serve contribution rights under either the common law or the comparative negligence statute by attempting to settle the plaintiff's entire claim. The *Jinkins* Court was mindful of the general rule that a cause of action for damages for personal injuries may be sold or assigned. The Court's holding in *Jinkins* was an exception to this general rule. The Court stated that "[a] settling defendant who is jointly responsible for personal injuries to a common plaintiff may not preserve *contribution rights* either by obtaining a complete release for all other parties allegedly responsible or by obtaining assignment of the plaintiff's entire claim."

expressly prohibits the assignment. *Monk v. Dallas Brake & Clutch Serv. Co.,* 697 S.W.2d 780, 782 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *Renger Memorial Hosp. v. State,* 674 S.W.2d 828, 830 (Tex.App.—Austin 1984, no writ). Since no statute expressly prohibits this assignment, we conclude that the assignment was not void (as against public policy).

■ Concerning the assertion that the Venturas did not have any damages, Baumgart's contention was that the Venturas did not sustain damages because American's defense and settlement of the *Martinez* suit provided the Venturas with what they would have sought, *i.e.,* coverage for the *Martinez* suit. However, the fact that American funded the settlement and paid the defense costs did not negate the damage element as a matter of law since the Venturas could have alleged additional compensatory damages against Baumgart. Further, American defended the *Martinez* suit pursuant to a reservation of rights letter in which it stated that no coverage was afforded for the collision and that it would handle the claim under the following reservation of rights:

> "Any action taken by or on behalf of the American Indemnity Company in handling of the claim which arises from the continued accident shall not be deemed a waiver, by either estoppel or by forfeiture, of any of the rights the Company may have to here and after disclaim coverage for a violation of applicable policy terms and conditions."

We conclude that Baumgart did not prove as a matter of law that the Venturas were not damaged.

■ Concerning election of remedies, an election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. When a party chooses to exercise one of them, the party abandons its right to exercise the other remedy and is precluded from resorting to it. *Custom Leasing, Inc. v. Texas Bank & Trust Co.,* 491 S.W.2d 869, 871 (Tex.1973). The doctrine is designed to prevent a party who has ac- quired a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong. The doctrine is not favored, and its scope should not be extended. *Fina Supply, Inc. v. Abilene Nat'l Bank,* 726 S.W.2d 537, 541 (Tex.1987). In the present case, the Venturas did not invoke the judicial process against Baumgart or American, and they did not assert inconsistent positions against Baumgart and American. We conclude that Baumgart did not prove that the Venturas elected a remedy. *See Custom Leasing,* 491 S.W.2d at 871. We hold that the trial court erred in granting summary judgment on the basis that American could not assert the Venturas' claims against Baumgart.

■ By sub-point two, American complains that the trial court erred in characterizing its suit as a contribution claim and in holding that it had no right to bring a cause of action against Baumgart that was not obtained through the Assignment. Baumgart sought to characterize American's cause of action as an improper attempt to assert a claim for contribution which American acquired by "settling" the Venturas' potential claims against himself and American (*i.e.,* Baumgart, as American's agent, injured the Venturas; American settled with the Venturas for the entire claim; American now, in effect, seeks contribution or indemnity from Baumgart based on the settlement). American contends, however, that independent causes of action remain for negligence, breach of contract, and fraud, based on Baumgart's direct breaches of its duty to American.

American's alleged tortious acts injured the Venturas. If American was liable to the Venturas, it was liable only through Baumgart because he was its local recording agent. When American settled the *Martinez* suit and acquired an assignment of the Venturas' potential claims against Baumgart, it gained the right to seek indemnity against Baumgart. *Beech Aircraft Corp. v. Jinkins* does not prevent a principal from paying a claim and then seeking indemnity against its agent. We also hold that the trial court erred in granting summary judgment on this ground.

■ By sub-point three, American complains that the trial court erred in holding that it had no direct breach-of-contract claim against Baumgart, independent of the Assignment. In September, 1985, American and Baumgart entered into an "AGENCY CONTRACT," in which Baumgart became American's agent and was granted authority to procure applications for insurance on American's behalf. In its Second Amended Petition, American alleged that Baumgart breached and negligently breached the Agency Contract by breaching the duty of good faith and fair dealing implicit in that contract. Baumgart contended that a duty of good faith and fair dealing was not implicit in the Agency Contract, and even if it was, its breach did not cause damages to American.

■ While the Texas Supreme Court has refused to impose an implied covenant of good faith and fair dealing in every contract, the Court has recognized that a duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by a contract. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). A duty of good faith and fair dealing is required of an agent in every transaction made on behalf of its principal. *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 513 (1942); *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 902 (Tex.App.—Corpus Christi 1989), *rev'd on other grounds*, 811 S.W.2d 931 (Tex.1991). An insurance agent is liable when he breaches the fiduciary duty he owes the insurer under an agency contract. *Hartford Casualty Ins. Co. v. Walker County Agency, Inc.*, 808 S.W.2d 681, 687–88 (Tex.App.—Corpus Christi 1991, no writ). The agent owes his principal loyalty and good faith, integrity of the strictest kind, fair, honest dealing, and the duty not to conceal matters which might influence his actions to his principal's prejudice. *Hartford Casualty Ins.*, 808 S.W.2d at 688; *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 319 (Tex. App.—Tyler 1985, no writ).

In the present case, the Agency Contract created a special relationship between Baumgart and American. As American's insurance agent, Baumgart owed American a duty of good faith and fair dealing in every transaction made on American's behalf. *See Kinzbach Tool*, 160 S.W.2d at 513; *Brady*, 779 S.W.2d at 902. Jeff Roerig, the attorney whom American retained to represent the *Martinez* defendants, testified by deposition that American funded the settlement and tendered a defense to the Venturas because of the problems between Baumgart and American. Baumgart did not negate American's allegations of breach of contract and damages. We find and therefore hold that the trial court erred in granting summary judgment on American's breach-of-contract claim.

■ By sub-point four, American complains that the trial court erred in holding that it did not have a direct negligence claim against Baumgart, independent of the Assignment. American's negligence claim was that, had Baumgart exercised the care of an ordinarily prudent local recording agent, then it would not have been compelled to undertake the defense of a risk which it had previously rejected. American alleged that Baumgart had committed fourteen separate negligent acts in handling the Venturas' insurance coverage on the Oldsmobile. Baumgart contended that American could not recover on its negligence claims because it did not have any damages.

■ Negligence principles apply to the liability of an agent to his principal for injuries to his principal's property when he is entrusted with the management of that property. *Hartford Casualty Ins.*, 808 S.W.2d at 688; *Haley v. Nickels*, 235 S.W.2d 683, 685 (Tex.Civ.App.—Austin 1950, no writ). When management of the principal's property includes entering into contracts on the principal's behalf, the laws of negligence may also apply to the agent's acts with regard to those contracts. *Hartford Casualty Ins.*, 808 S.W.2d at 688. In the present case, Baumgart did not negate American's allegations that his negligence caused it to suffer damages in defending

and settling the *Martinez* suit. We hold that the trial court was incorrect in granting summary judgment on American's negligence claims.

By sub-point five, American complains that the trial court erred in holding that its allegations of fraud were not a proximate cause of damages. The elements of actionable fraud are (1) that a material misrepresentation was made, (2) that it was false, (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion, (4) that the representation was made with the intention that it should be acted upon by the party, (5) that the party acted in reliance on it, and (6) that the party thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983).

An agent can be liable for making material false representations concerning matters in which he has an interest with knowledge that these false representations will be accepted and acted upon as true by his principal to whom they were made. *National Auto & Casualty Ins. Co. v. Allco Ins. Agency,* 403 S.W.2d 174, 179 (Tex.Civ.App.—Austin, 1966, no writ). Additionally, an agent can be liable for actual and exemplary damages as a result of binding its principal, an insurer, to a policy with misrepresentations. *Hartford Casualty Ins.,* 808 S.W.2d at 688.

In the present case, American alleged in its Second Amended Petition that Baumgart's representations in the Venturas' insurance application on the Oldsmobile were false, were *relied* upon, and caused it to sustain *actual damages.* Baumgart tried to negate the damages element by contending that American denied the application, regardless of the misrepresentations. This argument does not negate American's allegation that it suffered damages as a result of the misrepresentations and that it relied on Baumgart's assertions made in the application. American suffered damages by the added cost of receiving, processing, and performing the underwriting process on an application which would have been summarily denied had Baumgart not allegedly misrepresented the facts. The trial court erred in granting summary judgment on American's fraud claim.

American's point of error including its five sub-points are all sustained.

The trial court's summary judgment is REVERSED and the cause is REMANDED for trial.