CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON,
Plaintiffs,

v.

A & D INTERESTS, INC., d/b/a
Heartbreakers, et al.,
Defendants.

No. CIV.A. G–01–751.

United States District Court,
S.D. Texas,
Galveston Division.

April 12, 2002.

Richard Hunt Gateley, Brackett & Ellis, Fort Worth, TX, for plaintiffs.

Ralph Dean Irwin, III, Lohmann Glazer & Irwin, Robert P Gaddis, Gaddis and Associates, Andrew Louis Drapkin, Attorney at Law, Houston, TX, for defendants.

***ORDER DENYING DEFENDANT G. MORGAN INSURANCE AGENCY, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, AND MOTION TO DISMISS DEFENDANT A & D INTERESTS, INC., D/B/A HEARTBREAKERS' CROSS–CLAIM FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM***

KENT, District Judge.

Plaintiffs Certain Underwriters at Lloyd's, London ("Underwriters") bring

this lawsuit against a myriad of Defendants, including A & D Interests, Inc., d/b/a Heartbreakers ("A & D" or "Heartbreakers"), and G. Morgan Insurance Agency, Inc. ("Morgan"), for declaratory judgment, negligence, and negligent misrepresentation. Defendant A & D also lodges a slew of cross-claims against Defendant Morgan for negligence, negligent misrepresentation, fraud, breach of fiduciary duty, and violations of the Texas Insurance Code, art. 21.21, and the Texas Deceptive Trade Practices Act. Now before the Court are two dispositive Motions filed by Defendant Morgan, a Motion to Dismiss for Failure to State a Claim, and a Motion to Dismiss Defendant A & D Interest, Inc., d/b/a Heartbreakers' Cross-Claim for Lack of Jurisdiction and for Failure to State a Claim. For the reasons articulated below, Defendant Morgan's Motions are hereby **DENIED**.

## I.

Since Defendant Morgan seeks to dismiss the claims of both Plaintiffs Underwriters and Defendant A & D pursuant to Rule 12, the Court presents the facts exactly as averred by both Underwriters and A & D, drawing distinctions only where necessary. Since 1985, Defendant A & D has owned and operated an adult entertainment club called Heartbreakers. In September of 1999, shortly before Heartbreakers' then current insurance policy was scheduled to expire, Defendant Morgan solicited Heartbreakers for the purpose of selling the establishment a new insurance policy. After reviewing Morgan's proposal and various promotional literature, Heartbreakers agreed to hire Morgan as its agent for the purpose of

procuring an insurance policy covering, among other things, liability arising from the service and sale of alcoholic beverages (also known as "liquor liability" or "dram shop" liability). Morgan accordingly collaborated with Heartbreakers in preparing and submitting insurance applications to general agents acting on behalf of Frontier Pacific Insurance Company ("Frontier") in La Jolla, California. These applications were signed by Morgan and Heartbreakers on September 28, 1999, and specifically represented that Heartbreakers had no prior losses or claims within the last five years.[1] After receiving these applications, Frontier issued a policy of insurance to Heartbreakers effective from September 30, 1999 to September 30, 2000 providing primary coverage for liquor liability in the amount of $1 million and umbrella coverage in the amount of $5 million. On April 6, 2000,[2] Morgan notified Heartbreakers that it had replaced Heartbreakers' insurance coverage with Frontier with another policy issued by a different insurer, but that such change would not affect Heartbreakers' premiums or effective coverage. Heartbreakers thereafter signed a policy cancellation and release form, and Frontier cancelled Heartbreakers' policy effective on March 31, 2000. On June 23, 2000, and again on July 6, 2000, Heartbreakers unsuccessfully requested a copy of its replacement insurance policy from Morgan. Then, on July 3, 2000, Heriberto Caceres and Salvador Alfaro were killed in a triple fatality automobile accident in Dickinson, Texas. The vehicle that allegedly caused the accident was driven by Michael Lee Slocum ("Slocum"), an individual who had

---

1. Underwriters allege these facts in their First Amended Complaint for Declaratory Relief, but Defendant A & D has not acknowledged having any role in preparing or submitting these insurance applications.

2. Underwriters mistakenly identify this date as April 6, 1999, rather than April 6, 2000, in their Complaint. According to Defendant A & D, however, Heartbreakers was actually informed of this change in insurance coverage on April 5, 2000.

reportedly been consuming alcohol at Heartbreakers shortly prior to the collision.

 Heartbreakers first learned of the triple fatality accident on July 10, 2000, and immediately contacted Morgan to request a copy of its insurance policy. That same day, Morgan approached Underwriters seeking to procure retroactive coverage for Heartbreakers during the period from March 31, 2000 to September 30, 2000. Morgan submitted insurance applications dated March 31, 2000 to Underwriters, in which Morgan represented that Heartbreakers had no known or reported losses or claims within the last five years. Attached to these applications was a letter signed by Heartbreakers averring the same.[3] In reliance upon these representations, Underwriters issued a temporary insurance policy to Heartbreakers on July 14, 2000. This temporary policy was conditioned upon an explicit verification that Heartbreakers had no known or reported losses or incidents since March 31, 2000. Morgan confirmed this fact in writing, and Underwriters issued an insurance policy to Heartbreakers on July 21, 2000, retroac-

tively effective from March 31, 2000 to September 30, 2000 ("the Policy"). Heartbreakers notified Underwriters of the July 3, 2000 automobile collision on August 18, 2000. Shortly thereafter, on September 6, 2000, a suit was filed against Heartbreakers in the 10th Judicial District Court of Galveston County, Texas, alleging that Heartbreakers and its employees acted negligently in serving alcohol to an intoxicated Slocum.[4] Heartbreakers then requested Underwriters to defend the lawsuit under the terms of the Policy, and Underwriters agreed to provide a defense subject to a reservation of rights.[5] Underwriters subsequently discovered that Morgan and Heartbreakers had misrepresented Heartbreakers' loss and claims history in the March 31, 2000 insurance applications, notably failing to report the July 3, 2000 triple fatality collision, as well as two prior incidents occurring in November of 1994 and 1996 respectively, both involving intoxicated drivers who allegedly caused injury accidents after leaving Heartbreakers, and both known to Heartbreakers at the time it applied for insurance coverage.[6]

3. Underwriters allege that Heartbreakers wrote and signed a letter to Morgan stipulating that Heartbreakers had not been presented with, nor was aware of, any incidents that might give rise to an insurance claim within the last five years. Heartbreakers has not corroborated this allegation.

4. The state court lawsuit is styled *Ibarra v. A & D Interests, Inc., d/b/a Heartbreakers and the Estate of Michael Lee Slocum*, Cause No. 00–CV–0899.

5. The Court notes that an insurer may defend an insured under a reservation of rights if the insurer believes, in good faith, that the underlying lawsuit may not be covered by the insurance policy. *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir.1983). In such a situation, a reservation of rights will not be a breach of the duty to defend, but a notice of the insurer's intent to reserve its rights. *Id.* If an insurer, however, assumes a defense without declaring a reservation of rights or obtaining a non-waiver agreement, and with

knowledge of the facts indicating noncoverage, it is the general rule that all policy defenses, including those of noncoverage, are waived, or the insurer may be estopped from raising them. *American Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 173 (Tex.App.—El Paso 1996, writ denied) (citations omitted); *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 550 (Tex.App.—Dallas 1990, writ denied); *Farmers Tex. County Mut. Ins. Co. v. Wilkinson*, 601 S.W.2d 520, 521–22 (Tex.Civ. App.—Austin 1980, writ ref'd n.r.e.); *see also* Couch on Ins. § 202.55.

6. According to Underwriters, Defendant Heartbreakers admitted during an examination under oath on August 22, 2001 that it was aware of the two prior incidents occurring in November of 1994 and 1996 at the time it submitted its application for insurance to Underwriters. Heartbreakers has not confirmed this allegation.

On November 26, 2001, Underwriters filed their Complaint for Declaratory Relief against Defendants Heartbreakers and Morgan, among others. On February 27, 2002, Underwriters filed their First Amended Complaint for Declaratory Relief, seeking a declaration that the Policy is void or forfeited as a result of Heartbreakers' actions and misstatements, and further alleging causes of action against Defendant Morgan for negligence and negligent misrepresentation. Underwriters also request a declaratory judgment that Defendant Morgan's conduct constituted negligence and negligent misrepresentation, such that Morgan is liable to Underwriters for any defense and indemnity costs incurred in the state court lawsuit. In its Cross–Claim Against Defendant G. Morgan Insurance Agency, Inc. filed on February 11, 2002, Defendant A & D concurs with the vast majority of facts averred by Underwriters, but does not affirmatively confirm or deny Underwriters' allegations that A & D knowingly prepared and submitted false insurance applications. Instead, A & D points the finger at Defendant Morgan, asserting a host of cross-claims against Morgan for negligence, negligent misrepresentation, fraud, breach of fiduciary duty, and violations of the Texas Insurance Code, art. 21.21, and the Texas Deceptive Trade Practices Act. Now, pursuant to its Motions to Dismiss,[7] Defendant Morgan urges the Court to dismiss all of the claims and cross-claims brought against it by both Plaintiffs Underwriters and Defendant A & D for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief

can be granted. The Court will now examine each of these Motions in turn.

## II.

### A. Legal Standard

Defendant Morgan characterizes its Motions to Dismiss as arising under Fed. R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, and Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). The burden of proof on a motion to dismiss under Rule 12(b)(1) is on the party asserting jurisdiction. *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984); *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex. 1995). Additionally, a party is entitled to dismissal under Rule 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted.

A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Home Builders Ass'n*, 143 F.3d at 1010; *Benton v. United States*, 960 F.2d 19, 20 (5th Cir.1992). When considering a motion to dismiss under Fed. R.Civ.P. 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). "However, conclusory allegations

---

**7.** Defendant Morgan originally filed its Motion to Dismiss for Failure to State a Claim on January 14, 2002. Morgan then filed a First Amended Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted on January 25, 2002, and a Second Amended Motion to Dismiss for Failure to

State a Claim Upon Which Relief Can be Granted on March 14, 2002. Additionally, Morgan filed its Motion to Dismiss A & D Interests, Inc., d/b/a Heartbreakers' Cross–Claim for Lack of Jurisdiction and for Failure to State a Claim on March 6, 2002.

or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Home Builders Ass'n,* 143 F.3d at 1010 (applying standard in context of Rule 12(b)(1)); *Home Capital Collateral, Inc. v. FDIC,* 96 F.3d 760, 764 (5th Cir.1996); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994) (both applying standard in context of Rule 12(b)(6)). The United States Court of Appeals for the Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be appropriate only in rare circumstances. *Mahone v. Addicks Util. Dist. Of Harris County,* 836 F.2d 921, 926 (5th Cir.1988).

**B. Motion to Dismiss Plaintiffs Underwriters' Claims**

Defendant Morgan postulates several grounds for dismissing Plaintiffs Underwriters' claims against it for declaratory relief, negligence, and negligent misrepresentation. First, Morgan generally contends that Underwriters have failed to state any claims upon which relief can be granted. Next, Morgan argues that Underwriters' declaratory judgment action is not ripe for consideration, thereby stripping this Court of proper subject matter jurisdiction. Finally, Morgan maintains that the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* cannot be used to grant relief on negligence and tort issues. For the reasons that follow, the Court rejects each of Morgan's contentions.

*1. Failure to State a Claim*

Morgan first attacks, albeit vaguely, the sufficiency of Underwriters' claims under Rule 12(b)(6). In support of this argument, Morgan recites various portions of Plaintiffs' First Amended Complaint in which Underwriters request that the Court declare the Policy, as well as Underwriters' duty to defend, null and void. Morgan also refers to two paragraphs in the Complaint in which Underwriters seek a declaration that Morgan breached its duties owing to Underwriters, such that Morgan is liable for any defense and indemnity costs incurred by Underwriters. Relying on these passages alone, and without any further analysis, Morgan concludes that Underwriters have failed to state any claims upon which relief can be granted.

Underwriters' claims against Morgan, including its request for declaratory relief, are all rooted in common law negligence. Specifically, Underwriters allege causes of action for negligence and negligent misrepresentation, and further seek a declaratory judgment that Morgan's actions were tortious. Based on fundamental tenets of Texas agency and negligence law, and its application in the insurance context, the Court believes that Underwriters have stated legitimate causes of action. Importantly, the Texas courts have applied negligence principles to the liability of insurance agents, and held insurance agents liable for making material misrepresentations to insurers. *See, e.g., Am. Indem. Co. v. Baumgart,* 840 S.W.2d 634, 639–40 (Tex.App.—Corpus Christi 1992, no writ); *Hartford Cas. Ins. Co. v. Walker County Agency, Inc.,* 808 S.W.2d 681, 688 (Tex.App.—Corpus Christi 1991, no writ). In particular, when an agent makes false representations to an insurer regarding the status of a policy and the insurer relies upon that represen-

tation to its injury, the agent is estopped from denying its liability to the insurer for the loss sustained by the insurer under the policy when the insurer has paid money in satisfaction of a claim under the policy. *Hartford,* 808 S.W.2d at 688 (citing *Nat'l Auto. & Cas. Ins. Co. v. Allco Ins. Agency,* 403 S.W.2d 174, 179 (Tex.Civ. App.—Austin 1966, no writ)). Moreover, an agent can be held liable for actual and exemplary damages as a result of binding its principal, an insurer, to a policy with misrepresentations. *Id.* (citing *Lane v. Sec. Title & Trust Co.,* 382 S.W.2d 326, 329 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.)); *Baumgart,* 840 S.W.2d at 640.

■ In light of this unequivocal case law, the Court finds that Underwriters have adequately stated claims upon which relief can be granted. Underwriters allege that Morgan, in collaboration with Heartbreakers, made material misrepresentations in various insurance applications submitted to Underwriters, specifically with regard to Heartbreakers' loss and claims history. Underwriters further contend that they never would have issued coverage for Heartbreakers had they been aware of the three prior alcohol-related automobile accidents already associated with the establishment. Assuming the veracity of Underwriters' well-pleaded allegations, as this Court must in conducting a 12(b)(6) analysis, the Court concludes that Underwriters have adequately stated claims for negligence and negligent misrepresentation under Texas law. If Morgan indeed made false representations to Underwriters regarding the status of He-

artbreakers' loss and claims history, and if Underwriters indeed relied upon such representations to its detriment, then Morgan's actions are actionable under theories of negligence and negligent misrepresentation, among others.[8] Accordingly, Underwriters' claims should not be dismissed pursuant to Rule 12(b)(6).

2. *Ripeness of Declaratory Judgment Action*

■ Morgan also contends that Underwriters' declaratory judgment action is not ripe for adjudication. Although Morgan classifies this argument as one under Rule 12(b)(6) for failure to state a claim, Morgan is actually challenging the Court's subject matter jurisdiction under Rule 12(b)(1). Article III of the United States Constitution confines federal courts to presiding over actual "cases" and "controversies." U.S. Const. art. I § 2. In an attempt to give meaning to Article III's "case or controversy" requirement, federal courts have developed a series of limiting principles called "justiciability doctrines," among which includes the doctrine of ripeness. *United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir.2000). Essentially, ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review. *Id.* (citing *Abbott Lab. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). The Fifth Circuit has

---

**8.** Underwriters could also potentially recover against Morgan for breach of fiduciary duty. It is well established under Texas law that an agency creates a fiduciary relationship as a matter of law. *See, e.g., Southland Lloyd's Ins. Co. v. Tomberlain,* 919 S.W.2d 822, 831 (Tex.App.—Texarkana 1996, writ denied) (citations omitted). Furthermore, a fiduciary owes its principal a high duty of good faith,

fair dealing, honest performance, and strict accountability. *Id.* This duty includes an obligation not to conceal matters that might influence the agent's actions to his principal's prejudice. *Id.* Applying these principles to the case at hand, a Texas court could find Morgan liable for breach of its fiduciary duty owed to Underwriters under the agency contract.

amply enunciated the standard for evaluating ripeness: "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' A case is generally ripe if the remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586–87 (5th Cir.1987) (citations omitted).

 In the present case, Morgan specifically challenges the ripeness of Underwriters' declaratory judgment action, which is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*[9] Initially, the Court recognizes that "applying the ripeness doctrine in the declaratory judgment context presents a unique challenge." *Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 896 (5th Cir. 2000). This is because declaratory relief is more likely to be discretionary, and declaratory actions contemplate an "ex ante determination of rights" that "exists in some tension with traditional notions of ripeness." *Id.* (citing *Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 692 (1st Cir.1994)). Notwithstanding these distinctions, the Fifth Circuit has stated that a "declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Id.* (citation omitted). As with any other action, then, a declaratory judgment suit is ripe for adjudication only where an "actual controversy" exists. *Id.; Texas v. West Publ'g Co.,* 882 F.2d 171, 175 (5th Cir.1989). The general rule pro-

nounced by the Fifth Circuit is that an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id.; Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986). Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis. *Orix,* 212 F.3d at 896 (citations omitted).

Evaluated under this lens, the Court finds that an actual, justiciable controversy clearly exists between Underwriters and Morgan. This is not a case of a purely abstract or hypothetical dispute, where certain contingencies have not yet occurred, or the potential harm is too speculative to pose an immediate and real threat. *See, e.g., Orix,* 212 F.3d at 896 (deeming as unripe a declaratory judgment action that sought to bar the filing of a broad class of "unasserted, unthreatened, and unknown claims"); *United Transp. Union v. Foster,* 205 F.3d at 857–58 (determining that a pre-enforcement declaratory challenge to a state railroad law rested upon "a mountain of conjecture and speculation," since the necessary events giving rise to the operation of the challenged statute had not yet occurred); *New Orleans Pub. Serv.,* 833 F.2d at 587 (affirming dismissal of a declaratory suit on ripeness grounds where plaintiffs sought to enjoin future speculative actions of the New Orleans City Council). In stark contrast, Underwriters allege that Morgan has already committed various tortious acts that have already resulted in concrete injuries to Underwriters. Namely, Under-

---

**9.** The Declaratory Judgment Act provides in pertinent part: "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

writers claim that but for Morgan's negligence and negligent misrepresentations, Underwriters would not have agreed to insure Heartbreakers for liquor liability, nor be placed in the position of having to defend and indemnify Heartbreakers in the underlying state court lawsuit. Accordingly, Underwriters seek a declaration that Morgan's actions constitute negligence and negligent misrepresentation, such that Morgan is liable for Underwriters' expected defense and indemnity costs. While the Court realizes that the precise amount of damages accruing to Underwriters is not yet determinable (since the state court lawsuit against Heartbreakers is still ongoing, and Heartbreakers' liability, if any, has not yet been decided), this mere fact alone does not negate the existence an actual and real controversy. *See, e.g., Sydow v. Acheson & Co.*, 81 F.Supp.2d 758, 762–63 (S.D.Tex.2000) (Kent, J.) (finding an actual controversy where defendants refused to split an expected $6 million contingency fee with plaintiffs in accordance with a contingency fee agreement, even though defendants had not yet received the fee, because there existed a "substantial possibility" that the fee would be granted to defendants). It is clear that Underwriters have already undertaken some expenses in defending Heartbreakers to date, and it is no mystery that Underwriters will continue to rack up significant defense costs on Heartbreakers' behalf until the conclusion of the state court case. Given the immediate and real impact of Morgan's actions upon Underwriters, both in the present and in the substantially likely future, the Court concludes that Underwriters have presented an actual and justiciable controversy that is ripe for declaratory review.

3. *Federal Declaratory Relief in Tort Action*

■ Morgan's final argument for dismissing Underwriters' claims is that the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, cannot be used to grant relief on negligence and tort issues. Relying upon a string of persuasive authority emanating primarily from other district courts, Morgan theorizes that it would be inappropriate for this Court to entertain Underwriters' request for a declaration that Morgan's acts constituted negligence and negligent misrepresentation, and that Morgan is therefore liable to Underwriters for its costs in defending and indemnifying Heartbreakers under the Policy. Although Morgan's interpretation is thoughtful, the Court believes it to be inaccurate, and in any case, inapplicable. First, the overwhelming majority of cases cited by Morgan stand for the sole proposition that a prospective tort defendant, *not* a prospective tort plaintiff, may not obtain a declaration of nonliability. *See, e.g., Douglas v. Don King Prods.*, 736 F.Supp. 223, 225 (D.Nev.1990); *UNC Resources, Inc. v. Benally*, 518 F.Supp. 1046, 1049 (D.Ariz. 1981); *Frito–Lay, Inc. v. Dent*, 373 F.Supp. 771, 773–74 (N.D.Miss.1974); *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir.1969); *States Steamship Co. v. Featherstone*, 240 F.Supp. 830, 832–33 (D.Or.1965) The principal justification for this rule is that it would be a perversion of the Declaratory Judgment Act to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the apparent tortfeasor. *See, e.g., Cunningham*, 407 F.2d at 1167. Because Underwriters are not prospective tort defendants seeking a declaration of nonliability, this batch of cases obviously does not apply.

■ However, Morgan does cite to two other district court cases that seem to hold that a plaintiff may not bring a declaratory action to determine whether a defendant is liable in tort. *See Southern Ins. Co. v. Bennett*, 680 F.Supp. 387, 389 (M.D.Ga.

1988) (stating that "a claim based upon negligent or intentional acts is not one appropriate for a decision in a declaratory judgment action"); *Aktiebolaget Bofors v. United States,* 93 F.Supp. 134, 134 ("No action may be entertained for a declaratory judgment adjudicating that the defendant is guilty of a tort."). While these cases appear to support Morgan's view, the Court finds them unpersuasive.[10] It is well established that the purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of the law or a breach of some contractual duty. *Hardware Mut. Cas. Co. v. Schantz,* 178 F.2d 779, 780 (5th Cir.1949). In short, the Act was designed to avoid or minimize the accrual of damages to a party who is not certain of his rights, and to afford such party an early adjudication without waiting for his adversary to see fit to commence suit. *E. Edelmann & Co. v. Triple–A Specialty Co.,* 88 F.2d 852, 854 (7th Cir.1937). Drawing upon these stated purposes, then, it is logical that a court would deny a prospective tort defendant the opportunity to obtain a declaration of nonliability, since this type of declaratory action would not settle a controversy prior to its becoming a violation of the law, or prevent or minimize the accrual of damages to an aggrieved party. In the instant case, however, where a prospective tort plaintiff seeks a declaration of a defendant's tort liability, the purposes of the Declaratory Judgment Act are satisfied. Here, Underwriters allege causes of action against Morgan for negligence and negligent misrepresentation, and additionally ask the Court to declare that Morgan is liable for Underwriters' defense and indemnity costs as a consequence of its tor-

tious acts. Although Underwriters could have delayed bringing suit until all of its damages had accrued, or until a declaration of its rights under the Policy was determined, it chose to bring a declaratory action against Morgan in the alternative in order to minimize its already accruing defense costs and likely indemnity costs in the future. The Court finds that this type of suit is contemplated under the Declaratory Judgment Act, and therefore should not be dismissed simply because it based in negligence and tort.

**C. Motion to Dismiss Defendant A & D's Cross-claims**

In addition to its Motion to Dismiss Plaintiffs Underwriters' Claims, Defendant Morgan asks the Court to dismiss Defendant A & D's claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The Court concludes, however, that supplemental jurisdiction properly exists over A & D's claims, and that A & D has adequately stated claims upon which relief can be granted under Texas law.

*1. Subject Matter Jurisdiction*

■ Morgan first suggests that jurisdiction is lacking over A & D's claims, since A & D neither raises a federal question, nor enjoys diversity of citizenship with Morgan. While the Court agrees that no independent ground exists for asserting jurisdiction over Morgan, it determines that supplemental jurisdiction can be exercised over these claims under 28 U.S.C. § 1367. Defendant A & D's various cross-claims against Morgan are brought pursuant to Fed.R.Civ.P. 13(g),

---

**10.** In particular, the Court questions the legal foundations upon which these courts may have based their decisions. In *Bennett,* the court cited to Wright & Miller, *Federal Practice & Procedure* § 2765, to buttress its notion that a plaintiff may not seek a declaration of a

defendant's tort liability. However, the text in Wright & Miller states only that a prospective negligence defendant may not be able to obtain a declaration of nonliability. Furthermore, the court in *Aktiebolaget* provided no reasoning for its decision.

which permits a party to plead as a cross-claim any claim "against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." It is settled in the Fifth Circuit that supplemental jurisdiction, previously known as ancillary jurisdiction, does extend to cross-claims properly asserted under Rule 13(g). *Travelers Ins. Co. v. First Nat'l Bank*, 675 F.2d 633, 638 (5th Cir.1982). Once subject matter jurisdiction is established over the original action, a court may exercise supplemental jurisdiction over cross-claims brought under Rule 13(g), even in the absence of an independent basis for federal jurisdiction. *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236–37 (5th Cir. 1988). This is because a claim satisfying the "transaction or occurrence" test of Rule 13(g) also satisfies the elements of supplemental jurisdiction. *Travelers*, 675 F.2d at 638.

In the instant case, A & D has clearly asserted proper cross-claims against Morgan pursuant to Rule 13(g), thereby conferring supplemental jurisdiction over these claims. A & D's cross-claims for negligence, negligent misrepresentation, fraud, breach of fiduciary duty, and violations of the Texas Insurance Code, art. 21.21, and the Texas Deceptive Trade Practices Act, all arise out of the same transaction or occurrence that is the subject matter of the original action. Principally, both Underwriters' and A & D's claims against Morgan are premised upon Morgan's actions and omissions in procuring Heartbreakers' insurance policy.

Moreover, as with other supplemental claims, A & D's claims are dependent, at least in part, upon the resolution of Underwriters' lawsuit. Underwriters seek a declaration that the Policy is void or forfeited as a result of A & D's actions, and only if such a declaration is granted, and A & D actually suffers harm, will Morgan become liable to A & D under its various tort theories. Because A & D has properly stated cross-claims under Rule 13(g), and because a court may properly exercise supplemental jurisdiction over Rule 13(g) cross-claims, the Court has valid subject matter jurisdiction over A & D's cross-claims against Morgan.[11]

### 2. *Failure to State a Claim*

Finally, Morgan, in a one-paragraph blip, states that A & D has failed to state claims upon which relief can be granted. The Court disagrees. Each of A & D's common law claims are actionable under Texas law, based upon the duties that an insurance agent owes to an insured. *See, e.g., May v. United Services Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992) (deciding that an insurance agent owes certain common law duties to a client for whom he undertakes to procure insurance, namely "to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so"); *Rainey–Mapes v. Queen Charters, Inc.*, 729 S.W.2d 907, 913–14 (Tex.App.—San Antonio 1987, writ dism'd by agr.) (affirming a jury's finding of negligence where an insurance agent made affirmative misrepresentations to an insured regarding the scope of coverage

---

**11.** Incidentally, Morgan also attempts to challenge A & D's "declaratory judgment action" on ripeness grounds, citing the same line of cases discussed above with regard to Underwriters' claims. However, A & D's cross-claims against Morgan are not declaratory in nature, and Morgan's analysis consequently does not apply. Regardless, in light of the fact that Underwriters has brought a lawsuit against A & D seeking a declaration that the Policy is void, it is clear that an immediate and actual controversy exists between A & D and Morgan.

under the policy). A & D has also averred legitimate causes of action against Morgan under the Texas Insurance Code and the Texas Deceptive Trade Practices Act. *See* Tex. Ins.Code art. 21.21., § 16(a); *see also, e.g., Thomas v. Ohio Cas. Group of Ins. Companies,* 3 F.Supp.2d 764, 766 (S.D.Tex. 1998) (Kent, J.); *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.,* 927 S.W.2d 296, 299–300 (Tex.App.—El Paso 1996, writ granted); *State Farm Fire & Cas. Co. v. Gros,* 818 S.W.2d 908, 912–13 (Tex. App.—Austin 1991, no writ) (all recognizing an insured's cause of action under the Texas Insurance Code and the Texas Deceptive Trade Practices Act for affirmative misrepresentations made by an insurance agent). Accordingly, A & D has stated claims upon which relief can be granted, and a dismissal under Rule 12(b)(6) is not warranted.

### III.

For all of the reasons set forth above, the Court hereby **DENIES** Defendant Morgan's Motion to Dismiss for Failure to State a Claim, and Motion to Dismiss Defendant A & D Interest, Inc., d/b/a Heartbreakers' Cross–Claim for Lack of Jurisdiction and for Failure to State a Claim. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**