Affirmed and Opinion filed January 11, 2005









Affirmed and Opinion filed January 11, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 
14-04-00203-CV

____________

 

BANNER LIFE
INSURANCE COMPANY, Appellant

 

V.

 

JESSE M. PACHECO, Appellee

 



 

On Appeal from the 157th
District Court

Harris County, Texas

Trial Court Cause No.  02-34006

 



 

O P I N I O N

Appellant, Banner Life Insurance Company,
filed suit against its agent, appellee Jesse Pacheco, alleging claims for
breach of contract, breach of fiduciary duty, and negligence related to the
agent=s sale of a life
insurance policy.  After a jury trial,
the trial court entered a take-nothing judgment in favor of the agent.  Appellant raises two issues on appeal,
challenging (1) the legal and factual sufficiency of the evidence to support
the jury=s findings on
breach of contract, breach of fiduciary duty, and negligence, and (2) the trial
court=s rulings on
appellant=s motions for judgment notwithstanding the
verdict and motion for new trial.  We
affirm the judgment of the trial court.








Factual and
Procedural Background

 In
August 1999, appellee Jesse Pacheco, an insurance agent for appellant Banner
Life Insurance Company, approached Linda Cherry concerning the purchase of a
life insurance policy.  Linda=s husband, Thomas
E. Cherry (ACherry@), filled out an
application for life insurance on his life. 
Cherry submitted the application to Banner, through its agent Pacheco,
on November 12, 1999.  The policy was in
the amount of $500,000.  

Cherry was required to have a medical exam
as part of the application for life insurance. 
At the time, Cherry was fifty-five years old and an avid runner.  He was examined by a medical examiner on
November 24, 1999.  Banner subsequently
approved Cherry=s application, and, on December 21, 1999,
Pacheco delivered the policy to Cherry=s wife. 

On January 7, 2000, Cherry saw a doctor
for treatment of what he thought was a boil located on his scalp behind his
ear.  During the exam, Cherry told the
doctor that the Aboil@ had been on his
head for the past one-and-a-half months, and that although he had attempted to
treat it at home with over-the-counter medications, it had not gone away.  Cherry was referred to another doctor who
surgically removed the growth at the end of January 2000.  Tests performed on the growth revealed it was
cancerous.  Cherry learned that the
cancer was in stage four and had spread from his kidneys to his lungs to his
head.  Cherry passed away  in December 2000.  

Upon Cherry=s death, his wife
made a claim for benefits under the Banner life insurance policy.  Because Cherry=s death was within
the two-year period of contestability, Banner investigated the cause and
circumstances of his death.  In its
investigation, Banner discovered Pacheco had delivered the policy to Mrs.
Cherry without inquiring with respect to the health of Cherry at the time of
delivery.  Banner determined that it did
not have enough evidence to deny the claim, without a risk of litigation and
exposure to extra-contractual damages, so Banner paid Mrs. Cherry $509,206
pursuant to the policy, including interest. 









Banner filed suit against Pacheco seeking
to recover from Pacheco individually the $509,206 amount that Banner paid to
Mrs. Cherry under the policy.  Banner
sued Pacheco for breach of contract, breach of fiduciary duty, negligent
misrepresentation, and negligence. 
Banner=s claims stem from alleged violations of
(1) the terms of the agent/broker agreement between Banner and Pacheco, and (2)
the terms of Cherry=s application for insurance which Pacheco
also signed.  Banner claims Pacheco
violated the terms of the agent/broker agreement and the insurance application
by (1) not hand-delivering the life insurance policy to Cherry personally, and
(2) not inquiring of Cherry at the time of delivery whether there were any
changes in his health. 

          The case was tried to a jury, and the
jury returned a verdict in favor of Pacheco. 
The trial court entered a take-nothing judgment in favor of Pacheco.

Discussion

Appellant raises two issues on appeal: (1)
whether the evidence supports the jury=s answers to the
breach of contract, breach of fiduciary duty, and negligence questions; and (2)
whether the trial court should have granted judgment notwithstanding the
verdict or granted appellant=s motion for new
trial, instead of entering judgment on the verdict.[1]  Because both of these issues are nearly
identical in challenging the legal and factual sufficiency of the evidence to
support the jury=s verdict, we will address them together.

I.        Legal
and Factual Sufficiency Standards of Review








When a party challenges the legal
sufficiency of the evidence supporting an adverse finding to a question on
which it has the burden of proof, the party must demonstrate on appeal that the
evidence establishes, as a matter of law, all vital facts in support of the
issue.  Dow Chem. Co. v. Francis,
46 S.W.3d 237, 241 (Tex. 2001) (per curiam). 
In making this determination, we examine the record for evidence that
supports the finding, while ignoring all evidence to the contrary.  If there is no evidence to support the
finding, we will then examine the entire record to determine if the contrary
position is established as a matter of law. 
We will sustain the challenge only if the contrary proposition is
conclusively established.  Id.

When a party challenges the factual
sufficiency of an adverse finding on an issue on which it has the burden of
proof, the party Amust demonstrate on appeal that the
adverse finding is against the great weight and preponderance of the evidence.@   Francis, 46 S.W.3d at 242.  In conducting a factual sufficiency review,
we consider and weigh all of the evidence in the record, both supporting and
contrary to the judgment, and can set aside the verdict only if the evidence is
so weak or if the finding is so against the great weight and preponderance of
the evidence that it is clearly wrong and unjust.  Id. 

II.       The
Evidence

During trial, the jury heard testimony
from several witnesses:  (1) Pacheco; (2)
William G. Fuchs, the Banner claims analyst who investigated Mrs. Cherry=s claim for policy
benefits; (3) Peter Marules, Banner=s insurance
expert; (4) Gary Beck, Pacheco=s insurance
expert; and (5) Mrs. Cherry.  The
following is a brief summary of the testimony of each of these witnesses.








Pacheco testified he had been an insurance
agent for Banner since April of 1999.  He
approached Mrs. Cherry about purchasing life insurance.  He stated Mr. Cherry bought the insurance to
provide for the education of his three daughters and for debts in case
something should happen to him.  As part
of the application for life insurance, Cherry underwent a medical exam that was
conducted by a medical examiner, and the medical exam was conducted without
Pacheco=s
involvement.  The results of the medical
exam were sent directly to Banner, who, after reviewing the application and
exam, approved Cherry=s application.  On December 21, 1999, Pacheco delivered the
life insurance policy to Mrs. Cherry. 

Pacheco testified as to his understanding
of the provisions in his agent/broker agreement with Banner and Cherry=s insurance
application addressing the delivery of policies and changes in health of the
insured between the time of application and delivery of the policy.  He testified concerning paragraph ten of the
agent/broker agreement that addresses the delivery of policies as follows:

10. 
DELIVERY OF POLICIES

No policy shall be
delivered unless at the time of delivery the applicant is in the state of
health and insurability represented in Parts I and II of the application and
any supplements thereto, the first premium has been fully paid, and delivery
has been made within sixty (60) days from the issue date of that policy.  The Agent/Broker shall return to the Company,
on the day following the expiration of the sixty (60) days, any policy not so
delivered, unless a specific extension of the delivery period has been
authorized.  If the applicant is not in
the state of health and insurability represented in the application when
delivery is attempted, the policy shall not be delivered, but shall immediately
be returned to the Company with a full written explanation.  

The agent/broker agreement was admitted into evidence during
trial.  According to Pacheco, paragraph
ten of the agent/broker agreement did not require personal delivery of the
policy to the insured or that questions be asked in person concerning the
insured=s health.  Pacheco stated that he would not have been
able to see the Aboil@ if he had seen
Cherry in person, and that if he had asked Cherry at the time of delivery
whether there was any change in health, 
he thinks Cherry would have said no, but that this was speculation.  Pacheco further testified that if upon
delivery of the policy there was a change in health, the company would not have
wanted him to deliver the policy.  








Pacheco was questioned concerning various
provisions in Cherry=s life insurance application, which Cherry
and Pacheco both signed, and the representations Pacheco made in the
application concerning Cherry=s health.  Cherry=s life insurance
application was also admitted into evidence. 
Pacheco testified he did not learn that Cherry had cancer until February
of 2000.  In 2001, Banner terminated its
agent/broker agreement with Pacheco, giving the reason that Pacheco did not
comply with paragraph ten of the agent/broker agreement.

Next, William G. Fuchs, the Banner claims
analyst who investigated Mrs. Cherry=s claim for
benefits under the life insurance policy, testified regarding his investigation
of Mrs. Cherry=s claim. 
During his investigation, Fuchs spoke with Pacheco, and he learned
Pacheco delivered the policy to Cherry=s wife on December
21, 1999 and did not inquire about Cherry=s health at the
time of delivery.  Fuchs testified
concerning his review of Cherry=s medical records
which revealed Cherry first noticed the Aboil@ behind his right
ear one-and-a-half months prior to his January 7, 2000 doctor appointment and
had been treating the Aboil@ with
over-the-counter medications.  Fuchs
acknowledged Cherry was not diagnosed with cancer until January 25, 2000.  

According to Fuchs, if Pacheco had asked
Cherry whether there had been any change in his health and Cherry said Ano,@ Banner would have
had a basis to rescind the life insurance policy.  Fuchs testified that if Banner had been told
of the growth behind Cherry=s ear, Banner
would not have issued the policy until a diagnosis had been made.  Banner=s position was
that the Aboil@ was a change in
health and that this change in health should have been reported.  He explained the company wants to know any
time there is a change in health so that a proper review can be made of the
condition.  

Fuchs acknowledged Banner drafted the
agent/broker agreement and the application for insurance.  He also testified that Cherry, as the
applicant, had an independent duty under the insurance application to notify
Banner of any changes in health. 








The next witness to testify was Banner=s insurance
expert, Peter Marules.  Marules  testified that based upon his review of the
agent/broker agreement, insurance application, and other documents in the case,
Pacheco did not adhere to the delivery requirements in his agreement with
Banner, and he was negligent.  Marules
testified Pacheco had a duty to inquire of Cherry=s health prior to
delivery of the policy and Pacheco did not comply with that obligation.  Upon being questioned whether the
agent/broker agreement requires that delivery be in person or that Cherry be
asked about his health in person, he said there are no such requirements.  In his opinion, there are two separate
obligations in the agent/broker agreement and the insurance applicationBone on the
prospective insured to tell and one on the insurance agent to ask.  According to Marules, Cherry was obligated to
advise Banner of any change in his health between the time of application and
delivery of the policy, and if he did not so advise, that would be grounds for
Banner to void the policy.    

Marules testified he did not see evidence
in the records that anyone thought the Aboil@ might be
cancerous prior to the actual surgery at the end of January 2000.  He confirmed that the records from Cherry=s November 24,
1999 medical exam did not contain any notation concerning a Aboil.@[2]  Marules= opinion was that
a Aboil@ is a change in
health and should be reported by the insured. 


After Marules= testimony, the
jury heard from Pacheco=s insurance expert, Gary Beck, who
disagreed with Marules= conclusions.  He saw nothing in the application requiring
delivery of the policy in person or requiring the agent to ask in person if
there had been a change in health.  Beck
testified paragraph ten of the agent/broker agreement does not specify personal
delivery by the agent and only says Adelivery.@  He also stated paragraph ten does not require
an agent to ask the insured in person if there has been a change in health
since the time of application.  








Beck testified that some life insurance
companies require a delivery receipt and that Banner could have specified that
in its agent/broker agreement with Pacheco. 
Beck explained that an insurance company wants to know if there is a
change in health because of the delay that often occurs in underwriting a life
insurance policy.  In his opinion,
however, the insurance company only wants to know of material changes to the
insured=s healthCsomething
life-threatening or that is going to cause life expectancy to be
shortened.  He does not believe a boil,
headache, stomachache, or cold is such a change in health.  Beck admitted the application does not
specify that only Amaterial@ changes in health
be reported, but he believes that is the reasonable interpretation.  

With regard to an agent=s inquiry of the
insured=s health, he
testified that making an inquiry can be something as simple as just looking at
someone.  Beck further testified Cherry
had an obligation under the insurance policy application to notify Banner of
any change in his health and that if Banner believed a boil was a change in
health, the policy could be voided based on a material misrepresentation.  

Mrs. Cherry was the last witness to
testify.  She stated her husband was
healthy in November and December of 1999 and was training to run the New York
City Marathon.  She first learned of the
growth behind Cherry=s ear after Christmas, and she thought it
was a boil.  She bought over-the-counter
medications to treat it, but these medications did not work.  At that point in time, she and her husband
did not see the Aboil@ as Aa big deal,@ but Cherry went
to the doctor because the Aboil@ sometimes bled in
his hair.  On January 7, 2000, Cherry=s dermatologist
referred him to a surgeon, and the surgeon removed the growth at the end of
January 2000.  The growth was tested, and
it was determined to be cancerous.

Mrs. Cherry testified her husband had not
seen any other doctors prior to the January 7, 2000 appointment and it had been
more than five years since he had a physical exam.  Cherry passed away December 29, 2000.

III.      Breach
of Contract








Banner contends the jury=s determination
that Pacheco did not breach the contract is contrary to the great weight and
preponderance of the evidence, clearly wrong, and manifestly unjust because the
evidence shows Pacheco breached both the insurance application and the agency
agreement by not delivering the policy to Cherry and by not inquiring of anyone
as to whether Cherry=s health remained in the same condition as
on the date he applied for the policy. 
Banner claims that APacheco=s contract required
him to physically deliver the policy to Mr. Cherry, but not to do so if Cherry
was not in the same state of health and insurability as when he applied for
insurance.@ 
Banner cites paragraphs one and six of the agent/broker agreement in
which Pacheco agreed (1) to comply with all underwriting guidelines, rules, and
regulations of Banner, and (2) to not waive, discharge, or change any term or
condition in any policy, agreement, or approved form.  Banner further asserts that A[t]he agency
agreement is to be read with the provisions of the insurance application.@

Paragraph ten of the agent/broker agreement
specifically addresses delivery of policies as follows:

10. 
DELIVERY OF POLICIES

No policy shall be delivered unless at the
time of delivery the applicant is in the state of health and insurability
represented in Parts I and II of the application . . . .  If the applicant is not in the state of
health and insurability represented in the application when delivery is
attempted, the policy shall not be delivered, but shall immediately be returned
to the Company with a full written explanation. 
         

The insurance application also contains a provision
regarding delivery of the policy : 

Except as may be
provided in a duly issued Conditional Receipt, no insurance shall take effect
unless and until the policy has been physically delivered and the first full
premium paid during the lifetime of the insured(s) and then only if the
person(s) to be insured is (are) actually in the state of health and
insurability represented in Parts I and II of this application and any
supplements thereto, copies of which shall be attached to and made part of any
policy to be issued.








We note the plain language of both the agent/broker
agreement and the insurance application does not require that the agent
personally deliver the policy to the insured or that the agent inquire of the
insured=s health.[3]

Banner and Pacheco=s insurance
experts both testified regarding what the agent/broker agreement and the
application required, and both documents were admitted into evidence.  Beck, Pacheco=s expert,
testified that nothing in the agent/broker agreement or application required
the agent to deliver the policy in person or to ask Cherry if there had been a
change in health.  Beck further testified
some insurance companies require delivery in person and ask for a delivery
receipt and that Banner could have required in person delivery or a delivery
receipt in the agreement, but it did not.[4]  He also testified that an agent asking the
insured whether there has been any change in health between the time of
application and the time of delivery is not, in his opinion, industry
standard.  Beck also stated that Cherry
had an obligation under the insurance application to notify Banner of any
changes to answers given in the application before accepting delivery of the
policy.








Marules, Banner=s expert,
testified that in his opinion Pacheco did not adhere to the delivery
requirements in his contract with Banner. 
However, upon being asked whether the agent/broker agreement requires
in-person delivery and/or that an insured be asked about his health in person,
Marules admitted there are no such requirements.  Marules also agreed with Beck that Cherry had
obligations under the policy to advise Banner of any change in health.

The jury as trier of fact is the sole
judge of the credibility of the witnesses and the weight to be given to their
testimony.  Mayes v. Stewart, 11
S.W.3d 440, 451 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).   Because we
are not the fact finder, we may not substitute our own judgment for that of the
trier of fact, even if we would reach a different answer on the evidence.  The amount of evidence necessary to affirm a
judgment is far less than that necessary to reverse a judgment.  Id.

Upon being asked whether Pacheco failed to
comply with his agreement with Banner, the jury answered, ANo.@  Based upon our review of the evidence, we
conclude the evidence is both legally and factually sufficient to support the
jury=s  finding of no breach of contract.  We overrule appellant=s issues as to the
breach of contract claim.[5]

IV.      Breach
of Fiduciary Duty[6]








Banner claims the jury=s determination
that Pacheco did not breach his fiduciary duty to Banner is contrary to the
great weight and preponderance of the evidence, clearly wrong, and manifestly
unjust.  Banner argues Pacheco clearly
had a duty to protect Banner=s interest and
that this duty included making sure that he did not obligate Banner on a policy
in which the applicant, at the time of delivery of the policy, was not in the
same state of health and insurability as when the application was
completed.  Banner asserts that because
Pacheco did not inquire about Cherry=s health, ABanner was left
with no reasonable alternative but to pay the benefit as a result of Pacheco
not observing his duty to Banner.@

Pacheco responds that the only duty placed
on Pacheco by the application was to inform Banner of any health problem that
Pacheco knew or learned about and that Pacheco did not have a duty to conduct
an independent investigation of Cherry=s health before he
delivered the Banner policy.  In support,
Pacheco references the testimony of both parties= insurance experts
who acknowledged Banner could have attempted to void the policy based upon
Cherry=s alleged failure
to advise Banner of the presence of the Aboil,@  regardless of what Pacheco did or did not do,
and Banner chose not to bring a claim to rescind the insurance policy.[7]  Additionally, Pacheco asserts on appeal that A[t]here is no
evidence in this record that Pacheco had knowledge that Thomas Cherry was a
poor insurance risk, in fact, all evidence available pointed to Thomas Cherry
being in excellent health.@

The following instruction on fiduciary
duty[8]
was submitted to the jury:

An insurance agent
has a fiduciary relationship to an insurance company.  This means that the agent owes the insurance
company a duty of good faith, reasonable care and skill in performing the agent=s duties.  The agent is responsible for any loss the
insurance company sustains as a result of the violation of this duty.

The jury found that Pacheco did not fail to comply
with his fiduciary duty to Banner.  








We review the sufficiency of the evidence
to support the jury=s finding of no breach of fiduciary duty.  The evidence undisputably shows that Cherry
was not diagnosed with cancer until the end of January 2000, and Pacheco did
not know that Cherry had cancer until February 2000.  Banner does not cite any authority that
requires an insurance agent to make an independent inquiry as to an insured=s health at the
time of delivery of a life insurance policy. 
Moreover, the evidence shows Cherry and his wife did not believe the Aboil@ was anything
serious, and Cherry did not learn the gravity of his health condition until the
end of January 2000.  

We have held Pacheco was not required by
contract to deliver the insurance policy in person to Cherry, the insured, or
to inquire at the time of such delivery as to any changes in the insured=s health.  Nevertheless, counsel for Banner urges this
court to hold Pacheco violated his duty to determine any changes in Cherry=s health and to
report same to Banner.  While we agree an
agent has a fiduciary duty of good faith and fair dealing to his principal,
here, Pacheco simply did not know, and had no duty to determine, Cherry=s health status at
the time the policy was delivered.  We
decline to hold an agent breaches a duty to his principal by failing to report
information of which the agent has no knowledge.

Based upon our review of the evidence, we
conclude the evidence is legally and factually sufficient to support the jury=s  finding Pacheco did not breach his fiduciary
duty to Banner.  We overrule  appellant=s issues with regard
to the breach of fiduciary duty claim.

V.      Negligence








Banner argues the jury=s finding that
Pacheco was not negligent is contrary to the great weight and preponderance of
the evidence, clearly wrong, and manifestly unjust.  Specifically, Banner contends Pacheco had an
obligation Aat the very least@ to view Cherry
prior to delivery of the policy to satisfy himself that Cherry was in the same
state of health and insurability as when the application was completed.  Banner claims the evidence shows Pacheco did
not see Cherry and, thus, Pacheco did not exercise the level of care that a reasonable
insurance agent would have exercised under the same conditions.

Banner does not cite any legal authority
in support of its arguments that Pacheco had a duty Ato view@ Cherry prior to
delivery of the policy.  In fact, no
authority is cited in the section of Banner=s brief
challenging the legal and factual sufficiency of the jury=s finding on
negligence.  Banner has not adequately
briefed this issue for appellate review and has waived this claim on
appeal.  See Tex. R. App. P. 38.1(h).  Moreover, the evidence showed Cherry was in
good health according to all known information at the time of delivery of the
policy.  Even if we assume without deciding
that Pacheco had a duty Ato view@ Cherry at the
time of policy delivery, the evidence at trial revealed that Aviewing@ Cherry would not
necessarily have disclosed the presence of the lesion on his scalp.  In addition, there was expert testimony that
Banner could have voided the life insurance policy based upon Cherry=s own failure to
advise Banner of the lesion on his scalp. 


Upon being asked whether the negligence,
if any, of Pacheco proximately caused injury to Banner, the jury answered, ANo.@  We conclude the jury=s finding is
supported by legally and factually sufficient evidence, and we overrule
appellant=s issues with respect to Banner=s negligence
claim.

VI.      Motions

In issue two, appellant complains of the
trial court=s rulings on its motion for new trial and
motion for judgment notwithstanding the verdict.  These motions attack the legal and factual
sufficiency of the evidence to support the jury=s verdict.  Because we hold the jury=s findings are
supported by legally and factually sufficient evidence, we hold the trial court
did not err in overruling these motions. 
See Hester v. Friedkin Cos., 132 S.W.3d  100, 105 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied); Mandell v. Hamman Oil & Ref. Co., 822
S.W.2d 153, 158 (Tex. App.CHouston [14th
Dist.] 1991, writ denied).

 








Conclusion

 

We overrule
appellant=s two issues and affirm the
judgment of the trial court.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

Judgment
rendered and Opinion filed January 11, 2005.

Panel
consists of Justices Anderson, Hudson, and Frost.

 











[1]  Appellant=s motion for judgment notwithstanding the verdict
attacks the legal sufficiency of the evidence to support the jury=s findings, and its motion for new trial attacks the
factual sufficiency of the evidence to support the jury=s findings.





[2]  Someone lined
out the section of the medical examiner=s report
(part three of the insurance application) inquiring whether A[o]n examination is there any abnormality of the
following: . . . [s]kin (include scars), lymph nodes, veins or peripheral
arteries?,@ and the Ayes@ or Ano@ boxes are blank.





[3]  The primary
concern of a court when interpreting an insurance contract is to ascertain the
true intent of the parties as expressed in the instrument, by giving terms
their plain, ordinary, and generally accepted meaning.  Kelley-Coppedge, Inc. v. Highlands Ins.
Co., 980 S.W.2d 462, 464 (Tex. 1998). 
No issue was raised at trial or on appeal asserting an ambiguity in
either the insurance application or the agent/broker agreement.  Parol evidence is not admissible for the
purpose of creating an ambiguity.  See
id.  However, neither party objected
to the admission of parol evidence in this case.





[4]  In Mayes v.
Massachusetts Mut. Life Ins. Co., 608 S.W.2d 612, 616 (Tex. 1980), the
Texas Supreme Court, upon analyzing whether the requirement that the answers in
an insurance application be true and correct at the time of delivery of the
policy should be considered a representation or a condition precedent,
reasoned:

[T]he insurer knows the length of delay between the
completion of the application and the issuance of the policy.  If this period was significant, the insurer
could easily ensure that the answers were still correct at the time of issuance
of the policy either by putting a good health provision in the application or
by requiring a supplemental statement of health.

Id.





[5]  The jury
question uses the term Aagreement.@  It is not clear whether that term refers to
the agent/broker agreement and/or the insurance application and agreement.  Because Banner=s brief
on this issue suggests the two agreements are to be read together, jury question
three must be construed as a finding Pacheco did not breach either agreement.





[6]  The charge
submitted to the jury for breach of fiduciary duty was based on Maryland
law.  A specific provision in the
agent/broker agreement provides that A[t]he
laws of the State of Maryland shall govern all matters concerning the validity,
performance and interpretation of this Agreement.@  At trial, Pacheco objected to the trial court=s submission of fiduciary duty under Maryland law, and
the trial court overruled his objection. 
On appeal, Pacheco does not complain of the trial court=s submission of the fiduciary duty issue under
Maryland law.





[7]  To avoid
liability under a life insurance policy on the basis of a misrepresentation by
the insured, an insurer must plead and prove five elements:  (1) the making of the representation; (2) the
falsity of the representation; (3) reliance thereon by the insurer; (4) the
intent to deceive on the part of the insured in making same; and (5) the
materiality of the representation.  Mayes,
608 S.W.2d at 616; Flowers v. United Ins. Co. of Am., 807 S.W.2d 783,
785 (Tex. App.CHouston [14th Dist.] 1991, no writ).





[8]  In Texas, as
in Maryland, an insurance agent owes his principal, the insurer, a fiduciary
duty of good faith and fair dealing in all transactions on the insurer=s behalf. See American Indem. Co. v. Baumgart,
840 S.W.2d 634, 639 (Tex. App.CCorpus Christi 1992, no writ).  Additionally, an insurance agent owes the
insurer strict integrity, fair and honest dealing, and the duty not to conceal
matters which might influence his actions to the insurer=s prejudice.  See
id.